## WATTS v. SOUTH BOUND R. R. CO.

1. EXCEPTION.—After appeal is perfected an exception cannot ordinarily be amended so as to raise a new point, but may be, so as to amplify one already made.

2. EVIDENCE—EXCEPTION.—Objection that testimony is irrelevant not sustained, because (1) it points out no specific rule of evidence violated; (2) relevancy of evidence is within discretion of trial Judge, which will not be disturbed unless it clearly appears to have been harmful to appellant, which does not here appear.

3. IBID.—HARMLESS ERROR.—Under issue whether plaintiff suffered from an injury received before accident, evidence that he had been discharged from the army, and had certificate of discharge, could not harm defendant after admission of evidence that plaintiff was examined when he entered the army and when he came away.

4. IBID.—CONVERSATIONS between physicians attending an injured man calling for denial by him, are irrelevant on issue of how he was injured, unless it appear that statements were made under circumstances calling for denial by patient, or that he was so situated as to hear, comprehend and reply thereto.

5. IBID.—CONVERSATIONS between witness and an unknown party cannot bind party to action, unless the party conversed with is identified as a party to the action.

6. DAMAGES—PUNITIVE.—THE CHARGE correctly lays down the rule that where there is injury to a private person from wilful and intentional acts of another, the injured person may be awarded punitive damages not as a fine or penalty for a public wrong but as a vindication of private rights wrongly invaded.

7. IBID.—IBID.—NEGLIGENCE.—Element which distinguishes actionable negligence from 'wilful tort is inadvertence, and punitive damages may be awarded for an injury inflicted wantonly and intentionally, but not for one resulting from gross negligence.

8. NEW TRIAL—JURY.—The affidavits on motion for new trial on
ground of separation of jurors before arriving at verdict show that
jurors were not subjected to outside influences, but only allowed to
leave jury room in charge of constable in cases of necessity, and
there being no abuse of discretion in refusing the motion, its refusal
is affirmed.

Before GAGE, J., Barnwell, April, 1900.    Affirmed.

Action for damages for personal injuries by George W.
Watts, jr., against South Bound Railroad Co.    From judg-
ment on verdict for plaintiff, defendant appeals.

*Mr. Wm. H. Lyles,* for appellant, cites: *Error to rule out
conversation between physicians while examining plaintiff:*
57 S. C., 467.    *Error for Judge to instruct jury that they
might give plaintiff punitive damages to punish defendant
for wrong done the public:* 22 Stat., 693; Code, 2, 4, 5, 6, 17,
18, 19.    *As to motion for new trial for separation of jury
before verdict:* 32 S. C., 403; 51 S. C., 319; 97 Ga., 702; 3
Day, 287; 2 Bail., 565; 8 Rich. L., 454; 9 Rich. L., 133.
*Error to charge jury that they could give plaintiff punitive
damages for gross negligence:* 54 S. C., 506; 16 Ency., 389;
34 S. C., 311; 117 N. C., 565; 91 U. S., 289; 91 U. S., 376;
N. C. B., N. S., 545; 28 Ind., 290; 94 N. C., 888; 36 Conn.,
182; 103 E. C. L. R., 543; 96 U. S., 702.

*Messrs. Bellinger & Townsend* and *P. H. Nelson,* contra,
cite: *First four exceptions are too general:* 52 S. C., 83, 474;
51 S. C., 56; 53 S. C., 72; 30 S. C., 156; 10 Ky., 92.    *Evi-
dence as to plaintiff's connection with army properly ad-
mitted:* 49 Ia., 92; 1 Cliff., 524; 58 N. W., 51; 11 Allen, 73.
*Much is left to discretion of trial Judge in determining rele-
vancy of evidence:* 52 S. C., 377.    *Conversation between
physicians properly excluded:* 8 Ency. P. & P., 237; 18 Neb.,
551; 58 S. C., 211; 117 Pa. St., 320; 36 S. W., 64; 12 Met.,
235; 3 Miss., 846; 39 N. Y., 39; 36 N. Y., 672; 70 Ill., 102;
27 Minn., 178.    *Objection withdrawn cures error of exclu-
sion, if any:* 43 S. C., 209; 120 U. S., 430.    *As to giving*

*exemplary damages:* 34 S. C., 324; 35 S. C., 487, 503; 53 S. C., 214; 57 S. C., 233. *Punitive damages are not quasi criminal in character:* 6 S. E., 485; 7 S. E., 447; 22 S. E., 59; 44 Wis., 282; 74 Cal., 149. *As to motion for new trial for misconduct of jurors:* 14 Ency. P. & P., 721; 1 S. C., 243; 16 S. C., 177, 344; 55 S. C., 90; 22 W. Va., 44; 70 Wis., 460; 79 N. W., 337; 13 S. C., 461; 26 S. C., 128; 1 N. Y. L. Re., 157; 48 N. E., 238; 36 Ga., 345; 34 Conn., 294; 13 Conn., 459; 15 Nev., 163; 13 Conn., 445; 149 Mass., 43; 2 Met., 558; 70 Wis., 462; 22 W. Va., 44; 61 Minn., 467; 17 N. W., 881; 29 Minn., 357; 53 Me., 536; 68 Ky., 206; 40 How. Pr., 106; 33 Pac., 867; 17 N. E., 100; 2 Rich., 122; 4 Rich., 598; 2 Strob., 183; 11 S. E. R., 296; 17 S. E. R., 35; 25 S. C., 172; 71 Ia., 372; *State* v. *Cucuel,* 31 N. J. L.; 33 Ohio, 77; 58 Pac., 171; 55 N. E. R., 667; 35 N. E. R., 723; 13 Conn., 335; 29 Ia., 597; 32 Me., 334; 1 Conn., 401; 64 N. Y. Sup., 339.

Before this case was called for trial, but after completion of appeal, upon notice setting out proposed emendment to exception 6, motion was made to so amend said exception. After consideration it was held that there could be only two grounds for amending an exception on motion: (1) for the purpose of making a new point; or (2) for amplying a point already made. The first cannot ordinarily be allowed, and the second is not necessary here, hence the motion is refused.

March 28, 1901. The opinion of the Court was delivered by

MR. JUSTICE JONES. This appeal is from a judgment on verdict against defendant for $7,500, in an action for damages for alleged negligence in leaving open and unguarded a cut across Wayne street, in the city of Columbia, into which the plaintiff alleged he fell and was thereby injured on the 19th of January, 1900, while walking along said street at night in the darkness and without warning of the cut.

The first five exceptions relate to rulings on the admission and exclusion of certain testimony, and are as follows: "1. Because, against the objection of the defendant, the plaintiff was allowed to testify what he did with the money earned by him while serving in the army."

This exception cannot be sustained; first, because it fails to point out any specific rule of evidence which was violated; and, second, if it was merely irrelevant, much must be left to the discretion of the trial Judge in the admission of such testimony, and his ruling thereon will not be reversed and a·new trial granted, unless it clearly appears to have been harmful to appellant, which does not at·all appear in this case.

The second objection is, "Because, against the objection of the defendant, the plaintiff was allowed to testify that he had been discharged from the army and had a certificate of discharge." This exception is likewise faulty in failing to assign specific error, and should for that reason be overruled. Furthermore, we may say that plaintiff having testified without objection that he was examined when he entered the army and examined when he came away, we cannot see that any prejudice could result to defendant by the testimony that he had a certificate of discharge, even though there was an issue whether the injury, from which plaintiff claimed to be suffering, existed in part, at least, before the alleged fall into the cut, as the mere having a certificate of discharge could add nothing to the testimony already admitted without objection, there being no suggestion even that plaintiff returned from the army without leave.

The third exception is, "Because, upon objection of the plaintiff, his Honor refused to allow the witness, Dr. J. J. Watson, to testify in response to the question, 'When Dr. Guerry came in, was any remark made about his condition of the back; what did Dr. Guerry· say?'"

This exception is also too general, in failing to designate the rule of evidence violated. If we must speculate as

to the design of the proposed statement by Dr. Guerry, that it was made in the presence of the plaintiff, and was sought to be introduced in order to create an inference that plaintiff by his silence admitted the truth of the statement, we may say that in order to warrant the admission of such testimony, it ought to be made to appear that the statement was made under circumstances naturally calling for a statement or denial from plaintiff, and that plaintiff was so situated as to hear, comprehend and reply to such statement. It seems that the proposed statement was made by one physician to another while in the room where plaintiff was lying, shortly after the alleged injury, either under the influence of morphine, or suffering from pain which morphine did not relieve. The Judge ruled that the testimony was irrelevant, and we cannot, from the record, say that it was relevant and material.

The fourth exception is, "Because, upon objection of the plaintiff, his Honor, the presiding Judge, ruled out the question to the witness, Dr. J. J. Watson, 'What did you say to Dr. Guerry as to the condition of that back in Mr. Watts' presence?'" This exception is also too general, and for this reason, as well as for the reasons stated above in reference to the third exception, must be overruled.

The fifth exception is as follows: "5. Because, upon the objection of the plaintiff, his Honor refused to allow the witnesses, J. P. Wade and Allen Williams, to testify as to what was said to them by the person whom they saw going into the cut on the night of the accident, and who was supposed to be plaintiff." We overrule this exception; (1) because it does not point out what rule of law was violated; (2) because the witnesses failed to identify the "person" they saw going into the cut as the plaintiff; and (3) because the respondent withdrew his objection to the testimony of the witness, Williams.

The sixth and seventh exceptions relate to the charge to the jury, and are as follows: "6. Because his Honor charged the jury as follows, to wit: 'I illustrate it in this way: if you

are driving your buggy, and by the failure on your part to exercise due care, that is, the care which a person of ordinary intelligence and prudence would exercise, you struck your neighbor's buggy and broke it, you are liable for the damage, the actual damage to the buggy; but, if you do it wilfully, out of a wicked heart, out of utter carelessness of the rights of your neighbor, you will be liable not only for the actual damage to the buggy, but for such other damages as will amount to punishment;' thereby indicating that it was within the province of the jury to award damages to the plaintiff against the defendant as punishment for the wrong done. .

"7. Because his Honor likewise charged the jury as follows, to wit: 'And that's what a jury are allowed to inflict upon parties who do wilful acts, not only the lack of ordinary care, but wilful, if it comes out of that sort of heart an injury results, from that sort of spirit, the jury may give such vindictive damages as are proper in their judgment, but not in compensation for the man who brings the suit, but as punishment for the man who did the wrong;' thereby indicating that it was within the province of the jury to award to the plaintiff damages, not as satisfaction of the wrong committed to him, but as a punishment to the defendant committing the wrong, when, it is respectfully submitted, that all punishment, under the Constitution and laws of the State of South Carolina, are matters to be visited on behalf of the public, and that one's liability therefor is to be determined only according to the methods prescribed for criminal practice."

Appellant properly admits that exemplary or punitive damages may be awarded in this State for injuries wilfully inflicted, but contends that such damages can only be awarded to vindicate the right of the plaintiff, and only in case actual injury has been inflicted, and that in the absence of actual injury to plaintiff such damages cannot be given merely in punishment for a wrong to the public. The appellant is manifestly correct in this view; since, if no actual

injury has been inflicted on the plaintiff, he has no cause of
action upon which any damage may be awarded. But we
do not think the charges complained of violate the principle
contended for. The charge quoted in the sixth exception
shows by the illustration given and the language used that
the Judge deemed it essential that actual damages be sus-
tained by the plaintiff to justify a recovery, and in the charge
quoted in the seventh exception it is also made clear that the
Judge instructed the jury that punitive damages may be
given when the injury to plaintiff results from the defend-
ant's wilful act. Exemplary or punitive damages go to the
plaintiff, not as a fine or penalty for a public wrong, but in
vindication of a private right which has been wilfully in-
vaded; and, indeed, it may be said that such damages in a
measure compensate or satisfy for the wilfulness with which
the private right was invaded, but in addition thereto ope-
rating as a deterring punishment to the wrong-doer, and as
a warning to others.

The appellant further contends that the charge complained
of in these exceptions was erroneous, because the complaint
did not by its allegations warrant a submission of the ques-
tion of exemplary damages to the jury. In the first
place, this contention is not justified by the excep-
tions, which do not specifically assign such ground as
error. But inasmuch as appellant sought permission to
broaden his exception so as to raise this point, which for
reasons stated was refused by the Court, we will *ex gratia*
consider the question. The complaint in the third para-
graph alleges "* * * that the defendant did carelessly,
wantonly, recklessly and negligently, and in disregard of the
provisions of said ordinance and the duty it owed to passen-
gers on said street and sidewalk, permit said excavation or
cut to remain unguarded and without any fence, and wan-
tonly, carelessly, recklessly and negligently omitted to fix
and keep any lights near said excavation or cut, and reck-
lessly, wantonly, carelessly and negligently omitted to erect
any bridge · or other crossing on said street or sidewalk

across said excavation or cut." In the fourth paragraph it is alleged that the plaintiff fell into said cut and was injured "by reason of the wanton and reckless carelessness and negligence of the defendant in not properly guarding and protecting said excavation, &c." These allegations we think are sufficient to warrant the charge in reference to exemplary damages. In the Centuary Dictionary and Encyclopedia, "wanton" is defined as follows: "2. Characterized by extreme recklessness, foolhardiness; or heartlessness; malicious; recklessly disregardful of right or of consequence." A charge that an act was recklessly and wantonly done, or omitted, indicates much more than mere inadvertence, and implies that the wrong-doer has a mind or spirit which, though adverting to its duty and the consequences of its breach, yet in unbridled license disregards the same. The language imports a conscious failure to observe due care from which evil intent may be inferred. See *Mack* v. *R. R.*, 52 S. C., 344; *Glover* v. *R. R.*, 57 S. C., 228. We would here state our view that exemplary damages may not be awarded for what in this State is termed "gross negligence," notwithstanding some expressions in the books to the contrary. In the case of *Pickens* v. *R. R.*, 54 S. C., 507, it is made clear that "wilfulness is the foundation of a recovery for exemplary damages, and such damages are not recoverable unless the wrongful act was wilful or intentional;" and it was further stated that anything in *Quinn* v. *R. R.*, 29 S. C., 381, to the contrary was not sound. In 16 A. & E. Enc. of Law, 392, 395, quoted with approval in *Pickens* v. *R. R.*, *supra*, it is clearly shown and well supported by citation, that the element which distinguishes actionable negligence from wilful tort is inadvertence.

The remaining exceptions assign error in the refusal of the motion for a new trial made for an alleged misconduct of the jury in separating before verdict without authority, and in having unauthorized communication with the constables. We quote from the order of the Circuit Court what the Court said in reference to this matter:

"What transpired after the jury retired is set out in the affidavit of Mr. Lyles and the affidavits read by counsel for the plaintiff, and what I shall now say, which constitutes my portion of the history of this transaction. I charged the jury with the case between half-past 4 and 5 o'clock on Saturday evening. The trial of the case had begun upon the Thursday morning before and had embraced all of Thursday, all of Friday, and all of Saturday. I was averse to sending the cause to the jury late on Saturday afternoon, for the reason that I think it is generally a bad practice to submit a case to a tired jury; but, at the request of counsel on both sides, all being from Columbia, including the Attorney General, I consented to charge the jury on Saturday evening, and did so charge them. I remained in Court for an indefinite time, the exact length of time I do not now recall. Before leaving the Court, I instructed the clerk to swear two bailiffs and put them at the door; I then retired to the hotel, some two hundred yards from the court house, and there remained continuously up to the time of the reception of the verdict. Some time about one or two hours after the jury had retired, certainly not less than one hour, the sheriff came to the hotel, I being on the upper balcony of the hotel and he on the ground, on the pavement, and stated one of the jurors was sick, and he held in his hand a phial which he stated he was requested to get filled for the juror. I advised him to have the prescription filled and give it to the juror. I think I then advised him, if the room in which the jury was confined was uncomfortable, that he was at liberty, at their request, to give them the liberty of the court house, and that all other persons should be excluded from the court house and from the portico or balcony in front of the court house. The sheriff, at that time, or upon another trip, advised me that some of the jury wanted to go to the rear—that is, to answer a call of nature. I advised him to let the jurors go to the privy, some two hundred feet in the rear of the court house, but that they should go under the escort of a constable. That is all the active connection I had with refer-

ence to the matter, and I must state the conversation with the sheriff and myself was not had in the presence of counsel on either side, I being on the second story balcony of the hotel and the sheriff on the pavement below. I am free to admit that if there is no law for escorting a juror out of the court room to the privy, if that is the law, then my instructing the sheriff to do it would not make it lawful. But the question arises, was that a violation of law? The language of the Chief Justice, in the case of the State *v.* Senn, is that where the jury is exposed to outside influence by separation, the verdict cannot stand. Before we go into this matter of separation, the question is made by counsel for plaintiff that the facts charged by Mr. Lyles were known by him, and that he should have made exception to the reception of the verdict upon the ground of misconduct of the jury. That may be so, but I shall not put my decision upon that ground, but meet the issue squarely, so if my decision on the main issue is wrong it can be corrected, and if my decision on that is wrong, it can be corrected in the Supreme Court also. Now, what I know about matters of this sort is gathered from twenty years practice at the bar and from observation of other men, good men, who have had the honor to sit where I have the honor to sit, and I have seen jurors after they were in charge of the case sent to the privy with constables; and I never heard it before questioned that that fact, and that fact alone, is what the Chief Justice calls exposure to outside influence. It could not be contended that when the sheriff, or what's the same, the constable, takes a juror to a privy, when there are no conveniences for answering a call of nature in the court house, I say it would not do to hold that that state of facts would invalidate the verdict, because it would be against sound reason; in the second place, it would be ignoring the necessity of the situation. When a juror is out of the room attending to a call of nature, in the hands of an officer, he is practically in the hands of the law, not separated, he is practically not exposed to any outside influence; he is in the hands of the law, and if the constable

in charge of him does not abuse the situation, and no one else does, there is no exposure to outside influence.   Now, if that be so in one case, it does not alter it that three jurors went out at one time, and three at another time, and two at another time.   The constable went out in every case armed with his staff.   I do not think, I am clear it will strike a fatal blow at the result of trial by juries, to hold that a juror couldn't leave the room under the escort of an officer of the law to relieve calls of nature.   That's all that was done, that's all that was claimed that was done.   But I say it is well enough to raise a question like this.   I am strenuously opposed to anything that looks like tampering with the jury, because there is a very small margin between an orderly trial and a scandalous trial.   But, under the facts and circumstances in this case, I do not think that there was any exposure to outside influence.   Rather, I am satisfied by the showing made by the jury and the constables in their behalf, that what looked like an iregularity was, in fact, not an irregularity at all.   The moment I was advised by Mr. Lyles by letter that he would make such a motion, I notified the sheriff to have the constables here in person, so that they could be sworn and this matter looked into rigorously." The matter of granting new trials for alleged misconduct of the jury is intrusted to the judicial discretion of the trial Court, and this Court will not interfere unless it clearly appears that there was an abuse of discretion.   The case discloses no abuse of discretion.   The affidavits submitted showed very clearly that there was no ground for suspicion even that any member of the jury had been subjected to improper influence.   The separation alleged was shown to have been by permission of the Court authorizing several of the jurors to attend to a call of nature outside the court room, which had no conveniences therefor, and in the custody of a sworn officer.   We must, therefore, overrule the exceptions raising this question. *State* v. *Anderson, 2* Bailey, 565; *Pulaski* v. *Ward, 2* Rich., 122; *McCarty* v. *McCarty, 4* Rich., 598; *Welch* v. *Welch,* 9 Rich., 133; *State*

v. *Way,* 38 S. C., 348. In the last mentioned case, Mr. Justice Pope as the organ of the Court said : "Unless it was established that some corrupt act or highly improper influence had been exercised to control a juror in reaching his verdict, it would not be error on the part of the ·Circuit Judge to refuse to set aside a verdict upon the bare suspicion that something improper had occurred." It was not shown in this case, as in *State* v. *Senn,* 32 S. C., 403, that the jury were "exposed to outside influences."

The judgment of the Circuit Court is affirmed.