BOYD v. SEABOARD AIR LINE RY.

1. PLEADINGS—DAMAGES—PUNITIVE.—A COMPLAINT alleging injuries from wanton and reckless acts of carelessness and negligence of defendant states a cause of action against defendant for punitive damages.

2. NONSUIT—RAILROADS—NEGLIGENCE.—Evidence here was sufficient to carry case to jury on question of negligence in using a defective brake, and negligent construction of a commercial siding, in that it had no derailing attachment.

3. RAILROADS—NEGLIGENCE—WANTONNESS.—It could not be said as matter of law that it is not a reckless and wanton act for a railroad company without inspection to place a freight car on a commercial siding without a good and sufficient brake, without derailing switch and down grade to main line, after express notice of danger and promise to remedy.

4. IBID.—IBID.—SHIPPER.—The whole charge being considered, the proper limitations were given to the doctrine of liability of a railroad company for damages from use by shipper of defective car.

Before DANTZLER, J., Kershaw, September, 1902. Affirmed.

Action by Wm. E. Boyd against Seaboard Air Line Ry. From judgment for plaintiff, defendant appeals.

*Messrs. W. H. Lyles* and *W. M. Shannon,* for appellant. *Mr. Lyles* cites: *In absence of proof, railroad will be presumed to have complied with Code, 1902, 2127:* 26 S. C., 49. *Failing to prove negligence alleged, plaintiff should have been nonsuited: Fell* v. *R. R.,* 33 S. C.; *Brown* v. *R. R.,* 57 S. C. *There being no evidence of wantonness, error to refuse to charge that jury could not give punitive damages:* 61 S. C., 170; 65 S. C., 440, 510, 490.

*Messrs. M. L. Smith* and *J. T. Hay,* contra, cite: *As to allegations of punitive damages:* 61 S. C., 170; 62 S. C., 331; 65 S. C., 332; 57 S. C., 233, 507; 60 S. C., 74, 48; 52 S. C., 344; 33 S. C., 435; 51 S. C., 304. *Refusal of nonsuit proper:* 63 S. C., 568; 16 Ency., 449, 450; 54 S. C., 509;

21 S. C., 556; 19 Ency., 1 ed., 881; 63 S. C., 376; 62 S. C., 335; 54 S. C., 605; 60 S. C., 74.   *Under facts here, question of exemplary damages properly submitted to the jury:* 64 S. C., 514; 65 S. C., 122; 54 S. C., 498; 65 S. C., 510; *Norman v. Ry.,* 65 S. C.; *Marsh* v. *Tel. Co.,* 65 S. C.; 35 S. C., 504.

July 28, 1903.  The opinion of the Court was delivered by

MR. JUSTICE JONES.  The plaintiff, a section master of the defendant company, while returning on a hand car to his home at Bethune, on November 8, 1900, was overrun by a wild freight car of defendant, which had escaped from the siding at Cassett, on the main line, and thereby sustained serious personal injuries, for which this action was brought. The jury rendered a verdict in favor of plaintiff for $22,000; but, in consequence of an order for a new trial *nisi,* the plaintiff remitted from the verdict so as to reduce it to $10,000, for which judgment was entered, from which comes this appeal.

1. The first and third exceptions and first division of the fifth exception question the ruling of the Circuit Court that the complaint, in the second cause of action, stated a cause of action for punitive damages.   The seventh paragraph of the second cause of action begins with this language: "That the Seaboard Air Line Railway was wanton and reckless in this: In wantonly and recklessly," and then proceeds to state the misconduct complained of. The complaint is too long for insertion here, but the principal acts which were characterized as done wantonly and recklessly were: (1) operating a freight car without workable brakes; (2) in failure to provide a derailing switch at the lower or northern side of the side track, notwithstanding the necessity therefor had been called to the attention of the defendant, and defendant had promised to remedy the defect. The seventh paragraph of the complaint concludes in these words: "That in consequence of the wanton and reckless acts of carelessness and negligence of the said Seaboard Air Line

Railway, the plaintiff demands as damages, &c." While the language last quoted, "wanton and reckless acts of carelessness and negligence," involves a contradiction in terms, since in strict speech there is no such thing as "wanton negligence" or "wilful negligence," because conduct which is wanton or wilful is not inadvertent, the element which characterizes negligence. But our legal nomenclature tolerates such expressions as wilful or wanton negligence, and so long as the meaning is understood, perhaps no harm can come from such inaccuracies. In the first part of this seventh paragraph of the complaint, however, the misconduct is not characterized as negligent or careless, but as wanton and reckless. Under numerous decisions of this Court, the complaint must be held to state a cause of action for punitive damages. *Watts* v. *R. R. Co.,* 60 S. C., 74, 38 S. E., 240; *Brassington* v. *Railroad Co.,* 62 S. C., 331, 40 S. E., 665.

2. There was no error in overruling the motion for nonsuit, as complained in the second exception. This exception alleges absence of all evidence tending to show that the alleged defect in the brakes was known to, or ought to have been known to, defendant or its employees, or that said defect existed prior to the occurrence causing injury, or that said brakes were defective for the ordinary purposes for which said brakes were used. There was evidence tending to show that the car, with others, was placed on a siding at Cassett by defendant's agents, about 12 o'clock on the day of the injury, for the use of Major S. R. Adams in shipping crossties from that point. That in order to more conveniently complete the loading of the car with crossties lying near the lower end of the siding, Major Adams requested the agent at Cassett to have the car placed there, and was directed by the agent to "pinch" it down with scantling. Major Adams thus described how the car left the siding: "Q. The station agent told you to do that? A. He said I could do that; that I could pinch them, as it was down grade. I worked at this until finally the car began

to move a little easier. The men dropped the scantling used as a pinch-bar, put their shoulders to the car and began pushing—got it on the slow motion; I was between the side track and the main line and walked on down. In the meantime, when they got it in motion, I put a man on top; now I said to him, whenever I tell you to put the brakes on, apply them; I want you to stop fifty or sixty feet south of the clear post; he was up on the car and the men were walking along. I saw the car begin to get more motion, and I said to him, put on the brakes to ease it down; he tried the brakes and they would not work. I told him to try the other way and see if not fastened; he tried, he could not move them, they would not move, they were not very rigid. I told him to hold back. The man remained on the car and tried to put on the brakes and could not hold it back; the car had 200 ties in it and the momentum was getting greater all the time. When I found that he could not hold it back, I told him to stop it. They got everything in reach and put under the wheels, but they would roll over or the wheels would split them off of the track and we could not stop it. It kept going; finally it reached the clear post and passed it. I supposed the moment it struck the switch it would be derailed, but it went out on the main line, the man got off the car; the car was going at the rate of about four miles an hour. The men followed it 200 or 300 feet below the north gate switch. The car had reached the top of the hill and begun going rapidly, and when they came back I notified the agent that the car had got away and to wire both ways and let them know it was coming." Major Adams further testified that the brakes on the car were apparently in first class condition, and that there was no indication of anything wrong with them until the attempt to apply them. But no one had particularly examined the brakes after the car was placed in the siding. The fact, however, that the brakes could not be applied a few hours after the car was placed in the siding was some evidence that the defect existed when the car was placed in the siding, there being no evidence that the brakes

had been in any way interfered with in the meantime. There was also evidence tending to show that the next morning after the injury the brakes were examined and it was found that the brakes could not be made to close on the wheel. Section 2127, vol. 1, Civil Code, requires that every railroad corporation shall cause a good and sufficient brake to be attached to every car used for the transportation of freight except four-wheeled freight cars used only for that purpose. This duty, we think, involves the duty of reasonable inspection to see that the brakes attached remain good and sufficient for that purpose. There was evidence tending to show that the agent at Cassett had charge or control of the car in the siding, and had failed to inspect or test the brake before directing the shipper, Mr. Adams, to "pinch" the car down to the lower end of the siding. The last evidence came out after the motion for nonsuit, but is properly for consideration of the Court in determining whether to disturb the ruling on motion for nonsuit. *Hicks* v. *Railway Co.*, 63 S. C., 567. But, in addition to this, there was evidence tending to show that the siding was not merely a pass siding, but was also used as a commercial siding, and that a derailing switch should have been placed in such case, and there was no such switch. The plaintiff testified that he had previously notified the road master of defendant company of the absence of a derailing switch, and that he had promised to supply one. The testimony was to the effect that such a switch would have derailed the car and prevented it from getting on to the main line.

3. The fourth exception is based upon the Court's refusal to charge defendant's request, "that there is no evidence of wantonness or wilfulness in this case, and the jury cannot give punitive damages." We do not think there was such a failure of evidence as would have warranted such a charge; for if there was any evidence at all from which an inference of wantonness could have been drawn by the jury, such a charge would have invaded the province of the jury. Whenever the evidence lies close to

the dividing line between negligence which is gross and misconduct which is wanton or wilful, it is right for the Court to leave it to the jury to draw the proper inference. *Stembridge* v. *Southern Railway,* 65 S. C., 444. It could not be said as matter of law that it is not a reckless and wanton act for a railroad company, without inspection, to place a freight car,. without a good and sufficient brake, on a commercial siding, without derailing switch and with down grade to the main line, after express notice of the danger, and promise to remedy.

4. The second subdivision of the fifth exception presents the point that it was error to charge that punitive damages were recoverable where there was evidence of recklessness or wanton disregard of the rights of others, because it indicated that evidence of recklessness alone would entitle the plaintiff to recover such damages. This exception must be overruled, because an examination of the charge as a whole shows that the jury were repeatedly instructed that to justify punitive damages it must appear that the acts alleged were wantonly or wilfully done. There may be a recklessness so great as to imply wilfulness, and in such case punitive damages may be awarded. *Procter* v. *Railway,* 61 S. C., 189, 39 S. E., 351; *Boyd* v. *Blue Ridge Ry. Co.,* 65 S. C., 330. In such sense only was the term recklessness used by the Court when the entire charge is considered.

5. At plaintiff's request the Court instructed the jury: "That if a railroad company, through its agents or officers, permit or authorize a shipper to handle a car that is in a defective condition, and by reason thereof injury should result to a servant of the railroad company, without any fault on the part of the said servant, said railroad company cannot escape its liability by claiming that such shipper was a third person, for whose act in this respect the company was not responsible." The sixth exception alleges that this was error, "in that it amounted to a charge that such handling of a car in a defective condition, whether or not such defective condition was known to the

railroad company, or could, with the exercise of reasonable diligence, have been known to the railroad company, would entitle the plaintiff to damages." The general proposition charged was correct, and was designed, no doubt, to meet the inquiry that might be raised as to whether the defendant could escape liability merely because the car was handled by a shipper. The limitations which appellant contends should have been made in this connection were fully covered in other portions of the charge made at appellant's request, as the following extracts will show : "That a railroad company does not warrant the safety or sufficiency of its cars, brakes, sidings and roadways, and can be held liable for damages resulting from defects in any such appliances only when there has been a failure on the part of the company to exercise due diligence in providing such appliances of a reasonably safe character, or in maintaining the same in such condition." "That even if a railroad siding has a defective switch, but the condition of the siding is such as to make it reasonably safe to use it, an employee cannot recover for an injury caused by the escape of a car from the siding, if such escape was caused solely by a defect in the brakes of the car, *unless the evidence shows that such defect was known to the employees of the company having charge of the same, or could have been known to them by the exercise of reasonable care."*

The exceptions are overruled, and the judgment of the Circuit Court is affirmed.