18323

Carrie Lee PARKS, Respondent, v. MORRIS HOMES
CORPORATION, Appellant

(141 S. E. (2d) 129)

462

*Frank Sawyer, Esq.,* of Spartanburg, *for Appellant,*

*John C. Monneyham, Esq.,* of Spartanburg, *for Respondent,*

March 15, 1965.

Lewis, Justice.

The plaintiff Carrie Parks brought this action against the defendant Morris Homes Corporation for the recovery of damages allegedly sustained by her on account of the fraud and deceit of the defendant's agents in procuring her signature to a building contract and a mortgage. This appeal is by the defendant from a judgment in favor of the plaintiff for $6,804.00 actual damages and $1,196.00 punitive damages. The exceptions charge error on the part of the trial judge (1) in refusing defendant's motions for a nonsuit and directed verdict, (2) in his rulings as to the admissibility of certain testimony, (3) in certain comments made during the trial, and (4) in refusing defendant's motion for a new trial upon the ground that the verdict was so grossly excessive as to show that it was the result of caprice, passion or prejudice.

The plaintiff owned three unencumbered, vacant lots located on Andrews Road in or near the limits of the City of Spartanburg, South Carolina. These lots were designated as Nos. 6, 7 and 8 on a subdivision plat, each with a frontage on Andrews Road of 100 feet. The defendant, which was engaged in the sale and construction of shell homes in the Spartanburg area at the time, secured on May 29, 1962, through its agents, the plaintiff's signature to a building contract for the purchase of a shell home and her signature to a note and mortgage over a portion of her lots to secure the time purchase price of $6,804.00. The mortgage was subsequently recorded on the public records of Spartanburg

County and the building was constructed by the defendant. This controversy arises out of the claim by the plaintiff that she never intended to purchase the shell home in question and was induced to sign the foregoing instruments through the fraud and deceit of defendant's agents.

While the testimony relating to the material issues in the case is in sharp conflict, in determining whether the trial judge erred in refusing the motions for a nonsuit and directed verdict, the evidence must be viewed in the light most favorable to the plaintiff, and our review thereof is so limited.

The plaintiff testified that, on the night of May 29, 1962, two agents of the defendant went to her home on Highland Street in Spartanburg for the purpose of selling her a shell home. She said that she told them that she was not ready to purchase a home and refused to buy. When she evidenced an interest in buying a shell home at some future time, the agents requested that they be allowed to run a credit report on her so that, when she did decide to build, there would be no delay in completing the transaction. Upon the insistence of the agents, she agreed for them to secure the credit report. When she agreed, she said that the agents produced a number of papers which they insisted she would have to sign for them to run the credit report. Due to her very limited education, she did not read the papers but, upon assurance by the agents that the papers, which she was asked to sign, related only to the credit report and did not affect her land, she signed them. She further testified that, since she lived some distance from her lots (approximately two miles away in another section of the city), and had no occasion to visit her property during the time, she did not know that the defendant had constructed a dwelling on her lots until she was asked to sign a completion receipt. When she discovered that the defendant had constructed a building on her property, she went to her attorney who, after investigation, informed her for the first time that a mortgage over her property had been recorded on the public

records by the defendant. The plaintiff denied that she purchased a building from the defendant or that she ever intended to sign a building contract or note and mortgage, and testified that her signature to the foregoing instruments was obtained through the fraudulent misrepresentations of the agents of the defendant that she was only signing papers to authorize them to run a credit report on her.

In order to make a case of actionable fraud, the plaintiff was required to prove that the agents of the defendant made a material representation; that it was false; that when it was made the speaker knew it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; that it was made with the intention that it should be acted upon by the plaintiff; that plaintiff was ignorant of its falsity; that she relied on its truth; that she had a right to rely thereon; and that she thereby suffered injury. *Gomillion v. Forsythe,* 218 S. C. 211, 62 S. E. (2d) 297, 53 A. L. R. (2d) 169.

With reference to the exceptions charging error in the refusal of the trial judge to grant defendant's motion for a nonsuit or directed verdict, the sole contention of the defendant on appeal is that there was no showing of actionable fraud on the part of its agents in that the plaintiff failed to prove her right to rely on any representation made, because the evidence conclusively showed that plaintiff failed to read the instruments which she signed and failed to avail herself of every opportunity to understand the nature and contents thereof. In other words, the position of the defendant is that any right of the plaintiff to rely upon the representations of defendant's agents as to the nature and contents of the instruments was lost by her failure to exercise reasonable prudence for her own protection.

It is well settled in this jurisdiction that the right to rely upon representations as to the contents of a written instrument must be determined in the light of the duty on the part of the representee to use reasonable prudence

and diligence under the particular circumstances for his own protection. In the application of this test to the conduct of the defrauded party, no fixed rule can be formulated, but the question must be determined upon the facts of the particular case. *Thomas v. American Workmen,* 197 S. C. 178, 14 S. E. (2d) 886, 136 A. L. R. 1.

What constitutes reasonable prudence and diligence with respect to reliance upon a representation in a particular case and the degree of fault attributable to such reliance will depend upon the various circumstances involved, such as the form and materiality of the representation, the respective intelligence, experience, age, and mental and physical condition of the parties, the relation and respective knowledge and means of knowledge of the parties, etc. *J. B. Colt Company v. Britt,* 129 S. C. 226, 123 S. E. 845.

The duty on the part of the defrauded party to exercise reasonable care to protect himself requires that he read the contract which he signs and, if he cannot read, that he get some one to read it for him. While the failure of the defrauded party to read his contract before signing, or to have it read for him, will ordinarily bar him of recovery, this is not an absolute rule. It is subject to the just doctrine that a wrongdoer cannot shield himself from liability by asking the law to condemn the credulity of the ignorant and the unwary. *Thomas v. American Workmen, supra,* 197 S. C. 178, 14 S. E. (2d) 886.

The plaintiff was a widowed negro woman, the mother of six children, two of whom resided in the home with her at the time of the execution of the instruments in question. She was of very limited education and business experience. Her testimony was that she "just went to the third grade in school" and could read "very little". The instruments were signed in blank at her home on the night of May 29, 1962. The two daughters were at home but did not engage in the discussions which preceded the signing of the papers, although one testified that she heard parts of the conversation while passing through the room where her mother and de-

fendant's agents were seated. The daughters were busy at the time getting ready to go to the picture show. One of the daughters was twenty years of age and the other twenty-three, one having gone to the seventh grade in school and the other to the ninth. Both were without business experience. While here daughters were at home at the time, the plaintiff did not consult with them about the propriety of her signing the papers, nor were they asked to read them for her. However, there is some question as to the ability of the daughters to intelligently interpret the instruments, even if they had been asked to read them.

Therefore, viewing the record in the light most favorable to the plaintiff, we have a case of an ignorant negro woman, a widow, with two daughters present of doubtful help and with no circumstances to incite suspicion, dealing with the agents of the defendant who were experienced in the business of selling shell homes, and who fraudulently misrepresented the nature and contents of the instruments so as to obtain the signature of the plaintiff thereto. Under all of the facts and circumstances we are satisfied that the issues were properly presented to the jury for determination, and the trial judge correctly refused the defendant's motions for a nonsuit and directed verdict.

The next group of exceptions relate to the alleged error in the rulings of the trial judge relative to the admissibility of certain testimony.

First, it is contended that it was error to allow the witness Smith to give his opinion as to the value of the house placed on plaintiff's property by the defendant and as to the cost of moving it from the premises. Objection was made to this testimony on the ground that the witness was not qualified as an expert on values or the cost of moving houses. The witness testified that he had been in the real estate business for twenty-seven years and had experience in both the construction and moving of houses. He gave the basis of his opinion by testifying in detail as to the size of the house involved, the materials used, and the type of construction.

Whether a witness has qualified to testify as an expert is a matter resting largely in the discretion of the trial judge. *South Carolina State Highway Dept. v. Hines,* 234 S. C. 254, 107 S. E. (2d) 643. We find no abuse of discretion in the ruling of the trial judge in this regard.

Next, the defendant says that it was error to permit the cross examination, over objection, of one of the agents of the defendant as to his prior employment with other companies who also sold shell homes. It is contended that such testimony would have been proper only if there had been an attempt to qualify the witness as an expert. This exception is without merit. The basis of the charge of fraud in this case was that the experienced and trained agents of the defendant obtained the signature of the plaintiff, an ignorant Negro woman, to certain documents through misrepresentations as to the nature and contents of the instruments signed. The testimony in question had a direct bearing upon the experience and training of the agents who allegedly perpetrated the fraud and was properly admitted.

The remaining exceptions to the rulings of the trial judge on the admissibility of testimony are as follows:

"3. The trial court erred in not sustaining the defendant's objection to the plaintiff testifying about the death of her husband.

"4. The trial judge erred in not sustaining objection to the plaintiff testifying to what the defendant's agents knew.

"6. The trial judge erred in not sustaining defendant's objection to the questions that the defendant was trying to rob the State of South Carolina."

The foregoing exceptions clearly violate Rule 4, Section 6, of the Rules of the Supreme Court, in that neither contains any assignment of error, and will, therefore, not be considered. *Love v. Love,* 57 S. C. 530, 35 S. E. 398; *Watts v. South Bound R. R. Co.,* 60 S. C. 67, 38 S. E. 240.

The next exception relates to alleged prejudicial remarks made by the trial judge during the examination of one of the witnesses.

During the trial of the case, the note and mortgage signed by the plaintiff were placed in evidence. The required State Documentary stamps were not affixed to the note and one of the agents of defendant was cross-examined relative to their absence. While this witness was testifying, the trial judge also questioned him concerning the failure to place stamps on the note. When the witness stated that he knew nothing about the stamps, the trial judge commented: "I just wanted to know. That has nothing to do with the case. I think as a matter of public policy, it ought to be looked into."

No objection was made during the trial to the remarks of the trial judge. The first contention that they were prejudicial was made in defendant's motion for a new trial. If the defendant considered the remarks of the trial judge prejudicial, it was its duty to call the matter to the attention of the court at that time by proper objection or motion. There is no sound reason to place matters of this nature upon a different basis from other occurrences during the trial of a case, in which the duty has been placed upon litigants to make timely objection in order to preserve the right of review. The fact that counsel may have some hesitancy in making objection during the trial to remarks or conduct of the court, which are considered prejudicial, does not excuse the failure to do so. An objection timely made to improper remarks or conduct of the court during the trial will afford in many instances an opportunity for correction of the error at that time or the granting of a mistrial as the particular situation requires. The interest of the trial court is only to see that a fair trial is had and objections to improper remarks or conduct on its part will be received in that spirit.

If the remarks of the trial judge were considered prejudicial, it was the duty of the defendant to call the matter to the court's attention at some appropriate time during the trial, and the failure to do so amounts to a waiver of the alleged error. See: *Green v. Boney,* 233 S. C. 49, 103 S. E. (2d) 732, 66 A. L. R. (2d) 1370; *Cross v. Southern Coal & Coke Co.,* 151 S. C. 309, 149 S. E. 14.

Finally, the defendant contends that a new trial should be granted on the ground that the verdict was so grossly excessive as to show that it was the result of caprice, passion or prejudice. No reason or argument is stated in defendant's brief to sustain the contention. In fact, the entire argument in the brief on this question is as follows:

"That his Honor should have granted the appellant's motion for judgment *non obstante veredicto or,* in the alternative, should have granted a new trial. (Transcript Folios 678-685.) That the verdict is excessive."

The foregoing is nothing more than a repetition of the assignment of error. Since no reason or argument is stated or authority cited to sustain the exception, it is properly considered abandoned. We have, however, reviewed the testimony and agree with the trial judge that the amount of the verdict is not so excessive as to indicate bias, passion or prejudice on the part of the jury.

Questions relating to the right of offset or credit, if any, of the defendant against the judgment for actual damages are not involved in this appeal, and we indicate no opinion thereabout.

Affirmed.

TAYLOR, C. J., Moss and BUSSEY, JJ., and LEGGE, Acting J. concur.