282 S.C. 565 (1984)
320 S.E.2d 55
William B. CALCUTT, Appellant,
v.
Carol Evonne CALCUTT, Respondent.
0244
Court of Appeals of South Carolina.
Heard June 18, 1984.
Decided August 30, 1984.
*566 *567 Allen C. Pate, Florence, for appellant.
Thomas E. Smith, Jr., Pamplico, for respondent.
Heard June 18, 1984.
Decided Aug. 30, 1984.
SHAW, Judge:
This is an appeal from a family court order awarding respondent-Carol Calcutt a divorce on the ground of adultery, $300 per month alimony, $250 per month child support, and $800 attorney's fees. She also received custody of the parties' only child. Appellant-William Calcutt was granted reasonable visitation after a six month period. The trial judge also enjoined Mr. Calcutt from contacting or harassing Mrs. Calcutt, her immediate family, and their daughter in any manner except in connection with the exercise of his visitation rights. With the exception of the issue of child custody, Mr. Calcutt appeals all aspects of the trial judge's order. (The exception with respect to equitable distribution was abandoned.) We affirm.
The parties were married on February 15, 1964, and their only child, Tanya Lynn, was born on May 29, 1974. Mrs. Calcutt initiated the divorce action in June of 1981 on the grounds of habitual drunkenness and adultery.
The deterioration of the marital relationship began when Mr. Calcutt absented himself from the parties' home for days at a time. He explained his absence by telling Mrs. Calcutt he was assisting narcotic agents in drug enforcement activities and his life was in danger. Mrs. Calcutt initially believed her husband but later came to believe he was seeing another *568 woman. She attributed his change in behavior to drug use.
According to Mrs. Calcutt, Mr. Calcutt deserted the marital home on their daughter's seventh birthday without explanation. Five days later, Mrs. Calcutt was able to trace his whereabouts to the home of Lois Hines. Mrs. Calcutt confronted her husband outside of Ms. Hines' house where Mr. Calcutt informed her he was never coming back home because he didn't love her anymore.
Following the separation, Mrs. Calcutt testified to observing the Hines home and seeing her husband's truck parked in the driveway during all hours of the day and night. Mrs. Calcutt's sister, Barbara Poston, testified she also saw his truck parked at the Hines home at various hours of the day and night. Mr. Calcutt admitted living with Ms. Hines, who lives with her mother, her two brothers, and her daughter, but denied having sexual relations with her. He stated he was living with her because he had been friends with the Hines family all his life and because Ms. Hines' mother washed his clothes for $25 per week. Mrs. Dorothy Hines, Lois' mother, testified she and Mr. Calcutt's mother were close friends and Mr. Calcutt was staying with her because he couldn't bear living in his mother's house in which she had recently committed suicide.
The record reveals Mrs. Calcutt's testimony as to how she found out her husband was seeing another woman and where he was living was hearsay. The trial judge elicited further hearsay from Mrs. Calcutt concerning a telephone conversation she had with Ms. Hines. In this phone conversation, Ms. Hines allegedly told Mrs. Calcutt she and Mr. Calcutt had been seeing each other for two months prior to the parties' separation and she and Mr. Calcutt were in love. There was no objection by Mr. Calcutt's attorney to any of this hearsay testimony.
At the conclusion of Barbara Poston's testimony, Mrs. Calcutt's last witness, counsel for Mrs. Calcutt requested the injunction and general restraining order against Mr. Calcutt even though it had not been requested in the complaint. However, Mr. Calcutt had no objection to the issuance of the order.
On appeal from an order of the family court, the Court of Appeals has jurisdiction to find facts in accordance with its view of the preponderance of the evidence. *569 However, this broad scope of review does not require us to disregard the findings of the trial judge nor does it relieve the appellant of the burden of convincing us that the trial judge erred. Stevenson v. Stevenson, 276 S.C. 475, 279 S.E. (2d) 616 (1981). The trial judge, who saw and heard the witnesses, was in a better position to evaluate their credibility. Albert v. Blackwell, 280 S.C. 128, 311 S.E. (2d) 101 (S.C. App. 1984).
Mr. Calcutt initially argues there was insufficient evidence to support a finding of adultery. He complains much of the evidence as to his alleged adulterous behavior was based on hearsay testimony, the hearsay testimony should be excluded, and, once excluded, there is no competent evidence to prove adultery. While he concedes there was no objection made at trial, he argues it is improper for the trial judge to elicit hearsay testimony whether or not an objection is made and he did attempt to have this testimony deleted from the Transcript of Record.
The failure to make a timely and proper objection to the introduction of testimony waives the right to object to such testimony on appeal. Edwards v. Grand Lodge K.P. of South Carolina, 166 S.C. 445, 165 S.E. 181 (1932); Parks v. Morris Homes Corporation, 245 S.C. 461, 141 S.E. (2d) 129 (1965). An objection raised at the settling of the Transcript of Record is decidedly untimely.
Counsel for Mr. Calcutt on appeal, who did not represent him at the trial, argues trial counsel was hesitant to ask the judge to rule on the admissibility of testimony elicited by the judge. This argument is without merit. In a trial by court without a jury, the trial judge is entitled to ask questions on his own. Rives v. Pettit, 513 S.W. (2d) 475 (Ky. 1974). However, he must not presume the role of an adversary. The fact counsel may have some hesitancy in making an objection during the trial to the conduct of the court, which is considered prejudicial, does not excuse the failure to do so. Parks v. Morris Homes, supra; Lipscomb v. Poole, 247 S.C. 425, 147 S.E. (2d) 692 (1966). By failing to object to the introduction of this testimony, the right to do so on appeal was waived. Edwards v. Grand Lodge, supra.
Based on the evidence in the record, we feel the trial judge was correct in granting Mrs. Calcutt a divorce on the ground of adultery. Adultery must be established *570 by a clear preponderance of the evidence, but that evidence need not be direct; it may be established by indirect or circumstantial evidence. Gainey v. Gainey, 277 S.C. 519, 290 S.E. (2d) 242 (1982); Odom v. Odom, 248 S.C. 144, 149 S.E. (2d) 353 (1966). Eyewitness evidence is not required. Brown v. Brown, 215 S.C. 502, 56 S.E. (2d) 330 (1949). As a general rule, the proof must be sufficiently definite to identify the time and place of the offense and the circumstances under which it was committed. Insufficiency in this respect, however, should not be allowed to defeat a divorce where the court is fully convinced adultery has, in fact, been committed and the defendant had full opportunity to defend or refute the charge. DuBose v. DuBose, 259 S.C. 418, 192 S.E. (2d) 329 (1972).
The trial judge found that Mr. Calcutt committed adultery. This finding is not against the clear preponderance of the evidence. Mr. Calcutt's explanation to his wife for his lengthy absences from the marital home is inherently unbelievable. The more credible explanation is during this period he was engaging in acts of adultery and fabricated the narcotics story in a feeble attempt to account for his absences. An extra marital affair would also account for his change in behavior. There is no evidence in the record, other than Mrs. Calcutt's opinion, of his using drugs. Mr. Calcutt had the opportunity to refute this explanation Mrs. Calcutt claims was offered to her. Yet he did not. His sole defense consisted of a naked denial he had engaged in sexual relations with Ms. Hines.
Mr. Calcutt admitted to living in the same house with his alleged paramour. This is sufficient proof of the time and place of the offense, which appears to be a continuing one. DuBose v. DuBose, supra. Although Ms. Hines' mother, brothers, and daughter also live there, nonetheless, this close proximity provided ample opportunity and constituted a continuing and close social relationship which strongly corroborates the other evidence of adultery (Ms. Hines telling Mrs. Calcutt she and Mr. Calcutt were in love). Wingate v. Wingate, 272 S.C. 489, 252 S.E. (2d) 916 (1979).
Mr. Calcutt next contests the trial judge's award of alimony, child support and attorney's fees. Each award is sustainable under the factors set forth in Atkinson v. Atkinson, 279 S.C. 454, 309 S.E. (2d) 14 (S.C. App. 1983). With regard to *571 alimony and child support, Mr. Calcutt was the sole provider for his family. Prior to the separation, he paid all the bills and gave his wife money for groceries. Mrs. Calcutt only worked during the summer at her family's farm and then only earned $1,200. With the exception of this summer work, she has not worked outside the home in twelve years. She only has an eleventh grade education. While physically able to work, Mrs. Calcutt has no immediate job prospects.
In contrast, Mr. Calcutt is an engineer for Seaboard Coast Line Railroad. His net take home pay varies but averages close to $1,200-$1,400 per month. In addition, he owns sixty-six acres of land, valued at $60,000, that he inherited. The rent from this land, which was not listed on his financial declaration, provides him another $1,800 annually. One of the debts listed in his financial declaration has been paid off. This court takes a dim view of information withheld from the financial statement. Skipper v. Skipper, 278 S.C. 104, 292 S.E. (2d) 596 (1982).
Mr. Calcutt has no mortgage payment as the house where he was previously living is owned by Mrs. Calcutt's father, and he is currently living with the Hines. The amount of his household expenses since moving in with the Hines has probably declined also.
It was the misconduct of Mr. Calcutt which caused the marriage to break up. Despite the fact he no longer lives with his daughter, he is still under an obligation to support her as is Mrs. Calcutt. Section 20-7-40; Stevenson v. Stevenson, supra. To this end, Mrs. Calcutt provides Tanya with a place to live. Providing necessary shelter is an incident of child support. Section 20-7-420(15); Whitfield v. Hanks, 278 S.C. 165, 293 S.E. (2d) 314 (1982). The amount of financial support Tanya requires has not changed since Mr. Calcutt deserted the marital home. Mrs. Calcutt has no visible means of supporting her daughter. Based on all of the foregoing circumstances, we do not think the amount of child support nor the amount of alimony awarded is so excessive as to constitute an abuse of discretion. Long v. Long, 247 S.C. 250, 146 S.E. (2d) 873 (1966); Zeigler v. Zeigler, 267 S.C. 9, 225 S.E. (2d) 849 (1976).
*572 With regard to attorney's fees, the record shows Mrs. Calcutt has incurred $800 in fees. She testified she has no funds to pay her attorney. This situation is due, no doubt, to the fact Mrs. Calcutt spent $2,527 on house repairs over a five month period. This money came from a $2,300 joint savings account awarded Mrs. Calcutt to support her and her daughter pending the family court hearing and $1,600 she had in her own checking account. Of that $3,900, only $529 was left at the time of the hearing. While shelter is an incident of support and a house must be repaired, there was no showing as to the necessity of these repairs. That, however, does not change the fact Mrs. Calcutt is unable to pay her attorney. The trial judge felt it appropriate, and so do we, to require Mrs. Calcutt to pay $300 of the $800. Requiring Mr. Calcutt to pay the remaining $500 is reasonable under the circumstances of this case and the factors set forth in Atkinson v. Atkinson, supra.
Lastly, Mr. Calcutt excepts to the six month waiting period before he can exercise his visitation rights and to the injunction and restraining order. The six month period has passed, no actual controversy remains as to that issue, and the Court of Appeals will not rule on a moot question. Mathis v. S.C. State Hwy. Dept., 260 S.C. 344, 195 S.E. (2d) 713 (1973).
Ordinarily, to receive an injunction, it must be requested prior to the trial of the case. Mays v. Mays, 267 S.C. 490, 229 S.E. (2d) 725 (1976). Also, the party seeking the injunction and restraining order must show such facts and circumstances entitling her thereto. Odom v. Odom, supra. Here, counsel for Mrs. Calcutt requested the injunction at the conclusion of the presentation of her case. The trial judge specifically asked counsel for Mr. Calcutt if Mr. Calcutt had any objection to a general restraining order. No objection was made. In his order, the trial judge found Mr. Calcutt had consented to the restraining order. We agree.
It is well settled an appeal will not be entertained from an order by consent. Smith v. Lowery, 56 S.C. 493, 35 S.E. 129 (1900). The right of appeal from such an order is regarded as waived. Wilson v. All, 86 S.C. 586, 68 S.E. 824 (1910). This is especially true when, as here, there is nothing in the record controverting the fact that the parties consented to the restraining order. Bank of Florence v. Gregg, 46 S.C. 169, *573 24 S.E. 64 (1896). Mr. Calcutt's consent to the restraining order also waives any objection that it was not requested in the pleadings. Smith v. Lowery, supra.
Affirmed.
BELL and CURETON, JJ., concur.