19331

ALLEN-PARKER COMPANY, Appellant, v. Corine H. Ashley LOLLIS and One (1) Armor Mobile Home, 50 x 10 Serial Number FDAEXMG827, Respondents.

(185 S. E. (2d) 739)

*Messrs. Chapman & Lowery,* of Anderson, and *Richard James,* of Greenville, *for Plaintiff-Appellant,* cite:

*Michael D. Glenn, of Fant, Doyle, Glenn and Vaughan,* Anderson, *for Defendant-Respondent,* cites:

December 13, 1971.

Moss, Chief Justice.

This action in claim and delivery was instituted by Allen-Parker Company, the appellant herein, against Corine H. Ashley Lollis, the respondent herein, to recover the possession of one Armor Mobile Home because of the alleged default by the respondent in the payment due under a contract of conditional sale.

In the complaint, the appellant alleges that on January 10, 1966, the respondent executed a contract of conditional sale evidencing the sale to her of the aforesaid mobile home by Exhibit Mart, Inc., as seller. It was alleged that the sales price was $5,301.50 with a down payment of $295.00, leaving an unpaid balance of $5,006.50 which the respondent agreed to pay in forty-five monthly installments of $68.50 each and a final installment of $1,924.00 to be paid on December 20, 1969. It was further alleged that on January 10, 1966, the Exhibit Mart, Inc. assigned, with recourse, the aforesaid contract of conditional sale to the appellant. It is then alleged that the respondent made the payments set forth in said contract through October 20, 1969, but defaulted in and refused to pay the installment of $1,924.00 due on December 20, 1969. The appellant alleged in the complaint default, demand and refusal of delivery of the property, the amount due, and prayed for immediate possession of the Armor Mobile Home.

The respondent, by her answer and counterclaim, set forth (1) a general denial; (2) a defense of fraud alleging that the seller, Exhibit Mart, Inc., represented to her that she could assume the contract of one Charles M. Hall, a previous purchaser of the said Armor Mobile Home, and that there was an outstanding balance owed by the said Hall of $3,100.00. In this defense she further alleged that she was required to pay $200.00 for the equity of the said

Charles M. Hall. She further alleges that the contract evidencing her purchase of said mobile home was executed in blank and the said seller was unauthorized to insert a total purchase price of $5,301.50 instead of the agreed price of $3,100.00. It is then alleged that the said Charles M. Hall had never owned the mobile home and these facts were misrepresented to her by the seller; (3) that the contract provided for 8% interest after maturity and this constituted usury; and (4) that she had completely performed the contract and owes the appellant nothing thereunder and was entitled to an order of the court directing the appellant to deliver a certificate of title to her for the mobile home which she purchased or, in the alternative, that she be reimbursed for the amount she had paid upon said contract.

This case came on for trial before the Honorable Frank Eppes, presiding judge, and a jury, at the 1971 January Term of the Court of Common Pleas for Anderson County and resulted in a verdict for the respondent. The appellant prosecutes this appeal from such judgment, alleging various errors on the part of the trial judge.

The respondent testified that she purchased the mobile home from Exhibit Mart, Inc. and that Jimmy Scribner, the salesman, fixed the purchase price at $3,100.00, representing to her that such mobile home had been previously purchased by one Charles M. Hall. She testified that the salesman told her that Hall was three payments behind on the mobile home and that if she would catch up those payments he would let her have the trailer for the balance due, in the amount of $3,100.00. She was told by Scribner that the payments were $68.50 per month. She testified that she paid these three payments totaling $205.00 and also made an extra month's payment of $68.50 plus $25.00 to transfer the Hall papers over to her. She further testified that she signed an unfilled out or blank contract and that Scribner told her he would fill it out later incorporating therein their agreement. She further testified that she did not know she was signing a contract for the payment of $5,000.00 and

would not have purchased the mobile home at such price. The appellant objected to the foregoing testimony on the ground that such violated the parol evidence rule because a subsequent written agreement was entered into by the parties and such merged all prior conversations about the subject of the agreement. The trial judge overruled the objection and error is alleged.

The general rule is that all conversations and parol agreements between the parties prior to or contemporaneous with the written agreement are considered to have been merged therein so that they cannot be given in evidence for the purpose of changing the contract of showing an intention or understanding different from that expressed in the written agreement. *Charleston & W. C. Ry. Co. v. Joyce,* 231 S. C. 493, 99 S. E. (2d) 187. However, it is just as well established that if the writing was procured by words and with a fraudulent intent of the party claiming under it, then parol evidence is competent to prove the facts which constitute the fraud. *Parham-Thomas-McSwain, Inc. v. Atl. L. Ins. Co.,* 111 S. C. 37, 96 S. E. 697. It appears from the record here that the respondent by her answer and counterclaim alleged fraud on the part of the salesman of Exhibit Mart, Inc. This being true, she had the right to offer testimony to prove the fraud alleged even though such testimony sought to be introduced tended to vary the terms of the written instrument when it is alleged that such instrument was procured as a result of the fraud charged. When fraud is charged, much latitude is allowed in the admission of evidence on that issue. *Continental Jewelry Co. v. Kerhulas,* 136 S. C. 496, 134 S. E. 505.

The appellant asserts that the respondent signed an agreement stating that the contract contained all of the provisions agreed upon and was completely filled out prior to the execution thereof. It has been held that the falsity of a misrepresentation is not "tolled" by a formal expression to the contrary. Even specific provisions or stipulations in a contract providing in effect for immunity from

or nullification or waiver of preliminary or extraneous misrepresentations in connection with the contract are generally ineffective, and do not prevent a subsequent assertion of the misrepresentations as a basis for fraud. 37 Am. Jur. (2d), Fraud and Deceit, Section 387, P. 524 and 17 Am. Jur. 2, Contracts, Section 191, P. 558.

We conclude that there was no error on the part of the trial judge in admitting evidence tending to show fraud on the part of the appellant in the inducement of or preliminary negotiations to the written contract.

The exceptions of the appellant raise the question of whether it was a holder in due course of the contract upon which this action was brought. These exceptions were not argued in the appellant's brief and we consider such to be abandoned. *Shea v. Glens Falls Indemnity Co.,* 228 S. C. 173, 89 S. E. (2d) 221.

The appellant alleges error on the part of the trial judge in failing to grant its motion to strike the allegations of fraud on the ground that there was no evidence sufficient to require the submission of this issue to the jury.

We have heretofore recited the testimony of the respondent with reference to the purchase of the mobile home from Exhibit Mart, Inc. The purchase price, according to her testimony, was $3,100.00 payable in forty-five installments at $68.50 each. On the date of the purchase the respondent paid $205.00 plus one additional payment of $68.50 and was given a receipt reading "paid equity of $205.00 plus $68.50 one payment." A statement signed by the salesman for Exhibit Mart, Inc. recites that the respondent "hereby receives all equity paid in by previous purchaser on Armor Mobile Home Ser.: 827 Fifty by ten wide 1964 model . . . and does hereby assume balance of contract with payments of $68.50 monthly for the balance of Charles M. Hall contract and extention thereof."

The respondent called Charles M. Hall as a witness. He testified that in 1965 or 1966 he purchased a mobile home from Jimmy Scribner. He stated that such had not been repossessed and that he was still living in the mobile home. This witness was cross examined and asked as to whether he was Charles M. Hall, Jr. and lived in Ware Shoals, South Carolina. He stated that he was the only Charles M. Hall that he knew of. Apparently, there was exhibited to him a contract signed by Charles M. Hall, Jr., but he stated that the signature thereon was not his. At no time during the trial did the appellant offer any Charles M. Hall contract as evidence and the statement signed by Exhibit Mart, Inc. recites only a "Charles M. Hall contract" and does not refer to Charles M. Hall, Jr.

Viewing the testimony in this case, in the light most favorable to the respondent, we cannot say that only one inference can be drawn therefrom. Since more than one reasonable inference may be drawn from the evidence, the question of fraud was for the jury. *Cook v. Metropolitan Life Ins. Co.,* 186 S. C. 77, 194 S. E. 636.

The appellant contends the trial judge was in error in refusing to hold as a matter of law that the respondent was negligent in signing a blank contract and, as a result thereof, in failing to strike the defense of fraud.

In *Parks v. Morris Homes Corp.,* 245 S. C. 461, 141 S. E. (2d) 129, we said:

"The duty on the part of the defrauded party to exercise reasonable care to protect himself requires that he read the contract which he signs and, if he cannot read, that he get some one to read it for him. While the failure of the defrauded party to read his contract before signing, or to have it read for him, will ordinarily bar him of recovey, this is not an absolute rule. It is subject to the just doctrine that a wrongdoer cannot shield himself from liability by asking the law to condemn the credulity of the ignorant and the un-

wary. *Thomas v. American Workmen, supra,* 197 S. C. 178, 14 S. E. (2d) 886."

At the time of the transaction here involved, the respondent was forty-eight years of age and unmarried. She was employed at a shirt manufacturing company and "went to the sixth (6) grade". She testified that she could read and write "some" but stated that she did not have enough education to understand an extension payment and was "no trader."

We quote the following from the *Parks* case:

"It is well settled in this jurisdiction that the right to rely upon representations as to the contents of a written instrument must be determined in the light of the duty on the part of the representee to use reasonable prudence and diligence under the particular circumstances for his own protection. In the application of this test to the conduct of the defrauded party, no fixed rule can be formulated, but the question must be determined upon the facts of the particular case. *Thomas v. American Workmen,* 197 S. C. 178, 14 S. E. (2d) 886, 136 A. L. R. 1.

"What constitutes reasonable prudence and diligence with respect to reliance upon a representation in a particular case and the degree of fault attributable to such reliance will depend upon the various circumstances involved, such as the form and materiality of the representation, the respective intelligence, experience, age, and mental and physical condition of the parties, the relation and respective knowledge and means of knowledge of the parties, etc. *J. B. Colt Company v. Britt,* 129 S. C. 226, 123 S. E. 845."

In *Guy v. National Old Line Ins. Co.,* 252 S. C. 47, 164 S. E. (2d) 905, we stated that where the conduct of a policy holder amounted to a reckless or conscious disregard of his duty to avail himself of the opportunity and means at hand to note the contents of his policy and protect his own interest, he was barred from asserting fraud on the part of the insurer at the inception of the policy. In the cited case,

we did not pass upon the question of whether mere negligence in such respect, as opposed to conscious or reckless disregard of duty would preclude one from complaining of fraud in the inception.

Where a party to an oral agreement entrusts the other party with the obligation of reducing it to writing, he has a right to rely on the representation that it will be drawn accurately and in accordance with the oral understanding between them. The presentation of the instrument for signature is in itself a representation that the terms of such oral agreement will be put in the writing. Where a person is induced to sign an instrument as a result of a false representation that it will be filled in or prepared as orally agreed upon, the intentional ommission of terms required by the authorization to be included, or the inclusion of terms not so authorized, constitute fraud, invalidating the instrument as between the parties thereto, notwithstanding that the person signing it was negligent in relying on the misrepresentation. It was so held in *Peter W. Kero, Inc. v. Terminal Constr. Corp.*, 6 N. J. 361, 78 A. (2d) 814.

Viewing the record in the light most favorable to the respondent, we have here a woman of limited education and business experience dealing with one Scribner, who was experienced in the business of selling mobile homes and fraudulently represented that he would prepare the blank conditional sales contract in accordance with the agreement between the parties. There is evidence that the written conditional sales contract was prepared by Scribner contrary to the oral agreement between the parties. Under the facts and circumstances here revealed, we conclude that there was no error on the part of the trial judge in refusing to hold, as a matter of law, that the respondent was negligent in signing a blank contract and in failing to strike the defense of fraud.

The appellant asserts error on the part of the trial judge in holding that James Scribner, who was doing business as

Exhibit Mart, Inc., was its agent and in failing to direct a verdict for the appellant on the grounds that there was a complete absence of any testimony of agency.

Appellant seeks to insulate itself from any fraudulent act practiced by Scribner by contending that he was not its agent and by further contending that it was a holder in due course of the conditional sales contract signed by the respondent and that such was a negotiable instrument. If the conditional sales contract was a negotiable instrument then the question of agency would arise. However, if such was not a negotiable instrument the appellant would be an assignee thereof and the defense of fraud, if good against the assignor would be good against the appellant, whether or not Scribner was an agent of the appellant.

The conditional sales contract must be examined in the light of the Uniform Negotiable Instrument Act, Section 8-815, of the Code, which provides that an instrument which contains an order or promise to do an act in addition to the payment of money is not negotiable. Here, the conditional sales contract provides that the respondent must keep the said property free of all taxes, liens and encumbrances; shall not use the same illegally; improperly or for hire; shall not remove the same from the state or transfer any interest therein without the written consent of Scribner. She agreed to keep the mobile home insured against loss by fire, theft and collision.

In *Bank of Commerce of Charlotte, N. C. v. Waters,* 215 S. C. 543, 56 S. E. (2d) 350, we held that a conditional sales contract containing basically the same provisions above referred to was not a negotiable instrument under Section 8-815, of the Code. It follows that the appellant did not take the conditional sales contract here involved free of any existing defense between the respondent and Scribner. Thus, the agency or nonagency of Scribner is immaterial. In *First National Bank of S. C. v. Wade,* 245 S. C. 426, 141 S. E. (2d) 102, we held that the instru-

ment involved in the cited case was not a negotiable one and the plaintiff's right to possession was subject to such equities and defenses as defendant may have against the assignor at the time of assignment. It follows that the question raised by the appellant as to agency is without merit.

The appellant asserts that the trial judge committed error in two instances in his charge to the jury. At the conclusion of the charge, the trial judge temporarily excused the jury and gave counsel for the appellant the opportunity to express any objections to the charge as made or to request additional instructions, as required by Section 10-1210, of the Code. The record does not show that either of the matters now assigned as error was objected to or called to the court's attention in any way. Hence, these questions are not available on appeal. *Richardson v. Register*, 227 S. C. 81, 93, 87 S. E. (2d) 40, 46 (1955).

The final exception of the appellant alleges error on the part of the trial judge in failing to grant a new trial or a new trial *nisi* on the ground that the verdict rendered by the jury was not in conformity with the charge of the court. As to the forms of possible verdicts that the jury could render, the court charged:

"One form of verdict would be: 'we find for the plaintiff', and if that be your verdict you would write it on this form, as I have indicated, and that would be for the trailer or the money owed. Another form of verdict would be: 'we find for the defendant on the counterclaim' . . . so much money, depending upon your view of the facts and evidence."

The Jury's verdict was as follows: "We find for the defendant, and should be given title to the trailer, and attorneys fees." Upon the publication of the aforesaid verdict, the court asked if there were any objections to the form thereof. Counsel for the appellant made the sole objection that the amount of attorneys fees was not stated. The trial judge sent the jury back to their room and instructed them

to set the amount of such fees. The jury then returned to the courtroom and the verdict was again published and such was the same as previously published except the attorneys fees were fixed at $100.00. No objection was voiced to this verdict and the jury was then excused. Thereafter, the appellant moved for a new trial or for judgment *non obstante veredicto* on grounds dealing with the form of the verdict. When the aforesaid motion was made, counsel for the respondent in view of the objection made, waived the right to recover such attorneys fees.

It is well established that where a verdict is objectionable as to form, the party who desires to complain should call that fact to the court's attention when the verdict is published. Otherwise, the right to do so is waived. *Limehouse v. Southern Ry. Co.*, 216 S. C. 424, 58 S. E. (2d) 685. Any error in the form of the verdict was waived by failure of the appellant to make proper objection before the jury was discharged. *Deese v. Williams,* 237 S. C. 560, 118 S. E. (2d) 330 and *Rourk v. Selvey,* 252 S. C. 25, 164 S. E. (2d) 909.

The exceptions of the appellant are without merit and the judgment below is,

Affirmed.

LEWIS, BUSSEY, BRAILSFORD and LITTLEJOHN, JJ., concur.