23923

Walter N. LAWSON and C. Weston Houck, Appellants v. Mandeville F. ROGERS, III; Hugh K. Leatherman; Frank M. Rogers, IV; Alan Ray Harrison; and The South Carolina National Bank, Respondents.

(435 S.E. (2d) 853)

Supreme Court

*Patrick Michael Duffy*, of *McNair Law Firm, P.A.*, Charleston, *for appellants.*

*Gerald M. Finkel*, of *Finkel, Goldberg, Sheftman & Altman, P.A.;* and *A. Camden Lewis*, of *Lewis, Babcock & Hawkins*, Columbia, *for respondents.*

Heard Jan. 6, 1993.

Decided Aug. 23, 1993. Reh. Den. Sept. 24, 1993.

*Per Curiam:*

This is an appeal of an accounting action between partners in which the wrongful appropriation of partnership assets was alleged. We affirm in part and reverse in part.

### Procedural Background

In 1981, Walter N. Lawson (hereinafter "Lawson"), Mandeville F. Rogers (hereinafter "Rogers"), and Hugh K. Leatherman (hereinafter "Leatherman") formed a partnership called Howard Johnson's Riverfront Enterprises (hereinafter "partnership") for the purpose of operating a hotel in Charleston, South Carolina. In 1982, Lawson conveyed one-half of his interest to C. Weston Houck (hereinafter "Houck"), giving Houck and Lawson one-sixth interest each.

In April of 1990, Lawson and Houck brought this action against Rogers, Leatherman, Frank Rogers (the son of Rogers and the accountant for the partnership), and Alan Harrison (hereinafter "Harrison," the general manager of the hotel), alleging civil conspiracy, breach of contract, breach of contract with a fraudulent act, fraud, breach of fiduciary duty, breach of the covenant of good faith, and violations of the Unfair Trade Practice Act. Houck and Lawson alleged Harrison, Leatherman, and Rogers were retaining various sources of the partnership's cash for their own purposes. Houck and Lawson's complaint included a prayer for a formal accounting. Leatherman and Rogers counterclaimed, alleging Houck converted partnership assets by staying in the hotel as a guest without paying for the room. Leatherman and Rogers also sought a formal accounting.

The legal actions were stayed while the hearing on the accounting was held. After hearing the evidence presented by

both sides related to the accounting action, Judge Lockemy issued a decree. Judge Lockemy's findings are the subject of this appeal.

## Standard of Review

An accounting action between partners is an equitable action. Accordingly, we review the facts and make findings based upon our view of the preponderance of the evidence. *Townes Associates Ltd. v. City of Greenville*, 266 S.C. 81, 221 S.E. (2d) 773 (1976).

## Facts

Two separate types of misappropriation are alleged in this action. First, Lawson and Houck allege that Harrison, at the direction of Leatherman and Rogers, withheld cash revenues from various sources from the hotel accounts and divided the money equally between Rogers, Leatherman, and Harrison. Second, Lawson and Houck allege that several cash disbursements which had been sent to the hotel from the partnership shortly after Hurricane Hugo, were misappropriated. We deal with the facts relevant to each of the types of alleged misappropriation separately.

## Misappropriation of Cash Revenues

With the consent of Lawson and Houck, Rogers and Leatherman acted as the hands-on managing partners. Rogers and Leatherman made regular trips to the hotel to check on the hotel business. The partnership agreement provided that no partner would receive a salary. The original agreement provided that the profits and losses were to be shared equally. All partnership funds were to be deposited in the partnership bank account. The partners were also given equal votes in the management of the partnership. Leatherman and Rogers agreed to Lawson's conveyance to Houck and the original partnership agreement was amended to incorporate all four partners.

Harrison was hired as the general manager of the hotel in November of 1988. With Rogers' authorization, Harrison began retaining all revenues from the hotel's soda machines shortly after he began working at the hotel. However, in

March of 1989, according to Harrison, Rogers and Leatherman met with him and told him to collect all miscellaneous cash revenues and split the money in cash three ways between Harrison, Rogers, and Leatherman. These miscellaneous revenues (hereinafter the "cash" fund) were not recorded in the partnership books and consisted of everything but room rentals and the proceeds of the sale of food and beverages in the hotel's lounge and restaurant. Thus, the "cash" fund included commissions from telephone calls, VCR rentals, revenues from the rental of the hotel's parking to employees of nearby office buildings, revenues from the arcade machines, video poker machines, soda and snack machines. The "cash" fund also included miscellaneous revenues, including a refund received from a yellow page ad and proceeds from the sale of furniture.

A host of other proceeds were allocated to a so-called "slush" fund. The "slush" fund included insurance proceeds for a damaged vehicle, a fee collected from damage done to one of the rooms, and a refund for a telephone system. Harrison maintained he did not divide the "slush" fund between Rogers, Leatherman, and Harrison but used some of it for a family vacation, allegedly with Rogers' consent. Harrison kept only a cryptic account of some of the slush and cash funds which did not include the source of most of the funds listed. Some of the sums listed were estimates. None of the "slush" funds were reflected on the books of the partnership.

The cash was collected by the hotel's bookkeeper. The bookkeeper testified she began bringing cash to Harrison in February 1989. She did not keep a record of the money at that time. In November 1989, Harrison questioned whether she was giving him all the cash she collected from the various sources. At that point, the bookkeeper began recording the amounts given to Harrison and continued to do so until April of 1990. According to her records, during the period from November 1989 and April 1990, $24,115.90 in cash was given to Harrison from the miscellaneous sources listed above. The bookkeeper also testified that Harrison asked her, allegedly at Leatherman's request, whether it was possible to run the room bill through on a charge card then convert the amount to cash. She explained to Harrison that withdrawing cash from the room charges would cause the register to come up short.

The bookkeeper also testified that she had never given the previous manager cash from any source.

Both Leatherman and Rogers admit they received cash from Harrison on more than one occasion. Both maintain the money was intended to be reimbursement for their expenses incurred in managing the hotel. However, the money was not tied to any specific expenses nor were Leatherman and Rogers able to give an accounting of exactly how much money they had received in this manner. Harrison admits he did not know how much extra compensation he received from these sources either, other than his "gut feeling" estimate. He did not claim the money on his income tax returns. No cash was ever given to Lawson or Houck. In fact, Harrison was told by Leatherman and Rogers not to discuss hotel operations with Lawson or Houck.

A court-appointed accountant estimated the unrecorded partnership cash revenues collected from January 1989 to April 1990 to be $39,278.87. This figure was arrived at by contacting outside suppliers of the merchandise and interviewing hotel employees. The bookkeeper's record of the amounts given to Harrison and the accountant's estimates for the same time period correlated well.

In the Decree of Accounting, the trial court rejected the accountant's estimated figures and used only the bookkeeper's figures of recorded cash disbursements between November 1989 to April 1990, minus the amounts retained by Harrison, to compute a figure representing a sum unaccounted for in the partnership assets. The trial court ordered Leatherman and Rogers to each return one-half of this amount to the partnership, as they were unable to provide any documentation or justification for this disbursement to them. The trial court found the cash retained by Harrison, however, was proper additional compensation and within Leatherman and Rogers' power to authorize.

### Misappropriation through Cash Disbursements

In September of 1989, the hotel sustained severe damage from Hurricane Hugo. The hotel was open for business within a week but had extensive water and wind damage which took several months to repair. Rogers and Leatherman went to

Charleston immediately after the hurricane to begin restoring the hotel. Both men made many trips to Charleston that fall during the restoration.

Over $46,030.00 of the partnership funds was spent in cash disbursements. There were very few receipts for most of the cash expenditures and no other records kept. Harrison, Leatherman, and Rogers all maintain that the cash was used for the restoration of the hotel including labor and supplies. However, they do not agree on the items for which the money was spent. For example, according to Harrison, two sheets of plywood were purchased to cover each of the 150 doors, for a total of 300 sheets of plywood. Harrison thought they paid $25 per sheet. Leatherman testified that he believed the price was $75 a sheet. This discrepancy resulted in a difference of $14,000. Additionally, an engineer was paid somewhere between $12,000 to $22,800 in cash for work done on the hotel, including inspecting the building for structural damage. The engineer was not from South Carolina and was believed to have been from Mississippi. No one now remembers the engineer's last name and no records were kept. No reports were ever made by the engineer.

The court-appointed accountant agreed that immediately after the hurricane, the use of cash was necessary because the banks were closed and temporary help was more readily available for cash. The accountant testified that, nevertheless, some record of the expenditures should have been kept. Furthermore, many of the cash expenditures occurred months after the hurricane. The accountant testified that this was inappropriate.

The trial court found only the payment to the engineer who was not registered in South Carolina was improper, citing S.C. Code Ann. § 40-22-30 (Supp. 1991). It therefore ordered Rogers and Leatherman to return $19,500.00 to the partnership, but ordered no other remuneration from the post-Hugo cash disbursements.

*Law/Analysis*

The law holds each member of a partnership to the highest degree of good faith in is dealings with reference to any matter which concerns the business of the

common engagement, and each partner, being the agent of the firm, must be held to the same accountability as other trustees, in all matters which affect the common interest. *Edwards v. Johnson*, 90 S.C. 90, 72 S.E. 638 (1911); *see also* S.C. Code Ann. § 33-41-540 (1990). The relationship of a partnership is fiduciary in character and imposes on the members the obligation of refraining from taking any advantage of one another by the slightest misrepresentation or concealment. 68 C.J.S. *Partnership* § 76 at 516-17 (1950). It is one of the ordinary duties of partners to keep true and correct books showing the firm accounts. *Id.* § 91 at 529. In the absence of an agreement on the subject, the duty of keeping such accounts rests equally on each partner; but if one of the partners is the managing partner, the duty to keep books is on him. *Id.* A partner's right in the partnership property carries with it a right to an accounting. S.C. Code Ann. § 33-41-540 (1990).

A managing partner who has drawn cash from partnership funds has the burden of showing that the partnership has the benefit of the money so drawn. 68 C.J.S. *Partnership* § 433(a) at 972 (1950). Generally, where a partner charged with the duty to keep a record of partnership transactions fails to do so and is unable to account for them, every presumption will be made against him. *Id.* Once the defendant has made a prima facie showing that the accounts are complete and accurate, the burden shifts to the other party to attack the validity of the accounts. 1A C.J.S. *Accounting* § 50 at 51 (1985).

Although the managing partners, Rogers and Leatherman, may have expended some of their own money in the management of the partnership property and were entitled to reimbursement for this expense, we agree with the trial court that they showed no justification for the cash disbursements they received. The trial court, however, limited the amount to that which was recorded by the bookkeeper. The bookkeeper did not begin recording the cash given to Harrison until November 1989. It was undisputed that the procedure of dividing the "cash" fund among Harrison, Leatherman, and Rogers started much earlier. Accordingly, we disagree with the trial court's finding that the accountant's determination of the amount given to Harrison before that

time was too speculative. Although the accountant's determination did involve some degree of estimation, it was Leatherman and Rogers' lack of documentation which made the approximations necessary; therefore, they cannot be heard to complain. *Powers v. Calvert Fire Ins. Co.*, 216 S.C. 309, 57 S.E. (2d) 638 (1950).

Furthermore, we disagree with the trial court that the monies retained by Harrison were a proper part of his compensation. To characterize this cash-splitting scheme as merely part of Harrison's compensation is to ignore the scheme as a whole. This "cash" fund did not consist merely of the vending machine commissions but virtually all of the cash proceeds collected at the hotel which could remain unrecorded without detection. Leatherman and Rogers agreed to give Harrison one-third of this sum even though they had no idea how much money was involved and gave him not just the profits from the machines but all the proceeds collected from these machines. Meanwhile, the partnership was paying for all the soft drinks and food items for the machines. Furthermore, they did not account for this compensation in the partnership books nor did they inform their co-partners of this arrangement. In fact, according to Harrison, he was told not to tell Lawson and Houck of the cash collection arrangement. Accordingly, we cannot accept the trial court's finding that Rogers and Leatherman met their burden of showing this money was used for the benefit of the partnership. Therefore, we hold Rogers and Leatherman must return to the partnership the total amount of cash revenues withheld from the partnership accounts. For this purpose, we adopt the court-appointed accountant's figures and order Rogers and Leatherman to return $39,278.87 to the partnership.

Likewise, Leatherman and Rogers failed to account for the cash disbursements made after Hurricane Hugo. Although desperate times may call for desperate measures, managing partners must still account for what has been done. It is insufficient to claim the money was spent on repairs without having any accounting of how the money was used. It was undisputed that the plywood was purchased immediately after Hugo, unquestionably at a dear price. However, Leatherman and Harrison radically disagree on

what the price was. As Harrison was the one who actually paid for the plywood, we adopt his price and we find that $7,000 of the cash disbursed after the hurricane was accounted for to purchase plywood. Additionally, the record supports the extensive use of cash during the month following the hurricane. Some documentation of expenses is still required. Accordingly, we have accepted all expenses reflected by any legible documentation during this period. Therefore, we find an additional $7,079.82 as properly accounted for by Rogers and Leatherman. Nevertheless, there remains $31,950.18 of the $46,030.00 cash disbursed during the post-Hurricane period for which there has not been a proper accounting. Accordingly, we order Rogers and Leatherman to return this amount to the partnership. Therefore, the total amount of the judgment against Rogers and Leatherman should be $71,229.05.

Lawson and Houck raise a final issue, which is that the order below went beyond the scope of the accounting by making conclusions of fact and law which should be left for the tort claims. We disagree. The pleadings reflect all the claims arise out of the same set of facts and wrongdoing. Lawson and Houck, having chosen to proceed in an accounting action, have made an election of remedies, and may not now proceed with alternative remedies for the same wrong. *Jacobson v. Yaschik*, 249 S.C. 577, 155 S.E. (2d) 601 (1967); *see also* 1A C.J.S. *Accounting* § 55(a) at 61 (1985) (a decree in a suit for an accounting is conclusive on the defendants on the question of their liability to the plaintiff as to all matters dealt with in the decree, and is equally conclusive on the plaintiff as determining that he has no other claim against the defendant growing out of the subject matter involved).

Accordingly, we have reviewed the record and within our authority in actions in equity have made our own findings of fact as stated above, *Townes supra*, and hereby order a judgment to be entered in favor of the partnership against Rogers and Leatherman in the amount of $71,229.05.

Affirmed in part; reversed in part.