581 S.E.2d 496

**REDWEND LIMITED PARTNERSHIP, Wendswept, Inc., and Ron W. McDaniel, Individually, Appellants,**

v.

**William Ralph EDWARDS, a/k/a W. Ralph Edwards, a/k/a William R. Edwards, Ralph Edwards & Associates, Inc., William A. Edwards, Long Point Farms, LLC, and John and Jane Doe, Co-conspirators Known and Unknown, Respondents.**

No. 3629.

Court of Appeals of South Carolina.

Heard March 13, 2003.

Decided April 14, 2003.

Rehearing Denied June 12, 2003.

460

462

Timothy W. Bouch and G. Hamlin O'Kelley, III, both of Charleston, for Appellants.

Arthur G. Howe, Barry Krell, and Jerry N. Theos, all of Charleston; and John P. Freeman, of Columbia, for Respondents.

ANDERSON, J.:

Redwend Limited Partnership (the Partnership), Wendswept, Inc., and Ron McDaniel (collectively referred to as "McDaniel") filed suit against William Ralph Edwards (Edwards), Ralph Edwards & Associates, Inc., William A. Edwards, and Long Point Farms, LLC, (collectively referred to as "Edwards") alleging breach of fiduciary duty, fraud, breach

of contract, negligent misrepresentation, constructive fraud, constructive trust, unjust enrichment, tortious interference with contractual relations, breach of contract accompanied by a fraudulent act, violations of the South Carolina Unfair Trade Practices Act, civil conspiracy, and rescission or reformation of the contract. The causes of action arise from the withdrawal of Edwards from the Partnership and his subsequent purchase of property believed by McDaniel to be a partnership opportunity. McDaniel appeals the trial court's grant of summary judgment to Edwards. We reverse and remand.

## FACTS/PROCEDURAL BACKGROUND

The Partnership was formed on December 16, 1996, by filing a Certificate of Limited Partnership in the Office of the Secretary of State. The formal agreement of Redwend Limited Partnership is dated February 6, 1997. The Partnership planned to acquire and develop land for resale.

Edwards and McDaniel were both active in the Partnership. At the outset, McDaniel and another partner, Wendswept,[1] contributed property to the Partnership for development. According to McDaniel, Edwards agreed, as his contribution, to acquire for the Partnership two specific tracts of land, the Boone Tract and the Eddy Farm, which could be developed by the Partnership. The purpose of the Partnership is delineated in paragraph 3.1 of the Partnership Agreement:

3.1 *Purpose.* The character of the business and the purposes of the Partnership are:

a) To acquire, own, develop and sell the Rhett's Crossing Tract, the Stono Tract and the Boone Tract ... and in connection therewith to lease and/or acquire or deal with such real and personal property as necessary for the conduct of its business and to engage in all other lawful activity in support of its business; and

b) To reinvest the proceeds of sales and proceeds of capital contributions and/or loans in additional tracts of land or real estate of any nature or other property of any nature or kind, real or personal, tangible or intangible as

---

1. Wendswept is a company solely owned by McDaniel's wife. Wendswept owned property for development prior to the formation of Redwend.

is deemed to be in the best interest of the Partners as determined in good faith by the General Partner; and c) To conduct any business and engage in any other activity whatsoever deemed to be lawful and desirable by the General Partner.

The Partnership purchased the Boone tract and developed it as planned. During the Partnership, McDaniel and Edwards traveled together to the Eddy Farm on numerous occasions. Edwards, using John W. Patrick[2] as a straw man buyer, made an offer for the Eddy Farm property. The contract to buy the Eddy Farm was dated July 21, 1997. Patrick was listed as the buyer. Drayton Hastie, the attorney for the Partnership, was listed on the contract as the closing attorney. The contract was executed during the course of the Partnership. However, the property was not purchased for the Partnership. McDaniel declared Edwards told McDaniel that he submitted a contract to procure the Eddy Farm property on behalf of the Partnership in 1997. McDaniel professed: "We were trying to purchase the [Eddy Farm] property as a partnership. That's what I thought we were doing." Edwards disagreed with this assertion, claiming there was no effort by the Partnership to buy the Eddy Farm.

On August 4, 1997, Edwards and his father created Long Point Farms, LLC, which was in the business of acquiring property for development. In June 1998, Long Point Farms, along with John W. Patrick, entered into an agreement to purchase the Eddy Farm property. Edwards stated the "actual buyer" was "[p]robably Long Point Farms."

In July 1998, Edwards approached McDaniel about withdrawing from the Partnership. These discussions resulted in a handwritten agreement of withdrawal. The agreement included a provision that the Eddy Farm property would remain a partnership opportunity and asset after Edwards' withdrawal. Yet, according to McDaniel's deposition testimony, at the August 5, 1998, meeting where Edwards signed the withdrawal agreement, Edwards told McDaniel the Eddy Farm property was lost to other purchasers and should be omitted from

2. According to J. Drayton Hastie, the Partnership's attorney, Edwards used Patrick as the agent for the Partnership to acquire property so people would not know the property was being sold to a developer.

the August 5 withdrawal agreement. McDaniel stated that Edwards told him *"the lawyers from the estate got it."* McDaniel averred he relied on what Edwards told him and agreed to strike through the provision establishing the Eddy Farm property as a partnership opportunity and prohibiting Edwards from competing for the property. The scratched-through provision in the agreement then referenced "only [the] Folly Beach Tract" as a Partnership opportunity. The August 5 withdrawal agreement contained no merger clause.

On August 6, 1998, the day after Edwards withdrew from the Partnership, Long Point Farms became the sole purchaser of the Eddy Farm. The day after informing McDaniel the Eddy Farm had been "lost," Edwards finalized the purchase of the property. McDaniel was not aware that Edwards and his father had purchased the Eddy Farm property until around April of 1999.

McDaniel and Edwards sent the August 5 agreement to Hastie, the Partnership attorney, who telephoned McDaniel and asked him about the scratched-out portion of the agreement. McDaniel responded: "[D]on't worry about it, that's a piece of property the partnership was trying to get and it was sold to somebody else ... so if it's been sold to somebody else there's no point in dealing with it." Hastie declared "[t]he contention was that the only reason [the Eddy Farm] was marked out was that [Edwards] said that the partnership opportunity had been lost because it had been sold to somebody else."

A more formalized agreement was drafted by Hastie and presented to the partners on October 6, 1998, in connection with the distribution of some Partnership assets to Edwards. This agreement, which was signed by the partners, left out any provision regarding the Eddy Farm property. The contract included a non-competition clause which read:

3. *No Competition.* Edwards agrees that for a period of three (3) years from the date hereof that he shall not, directly or indirectly, on his own behalf, or as a partner, officer, executive, manager, employee, director, consultant, shareholder or otherwise, engage in any activity which is in competition with the Partnership's attempt to acquire the Folly Beach Tract, develop the Folly Beach Tract and sell

property from the Folly Beach Tract. It is agreed that Edwards may compete with the Partnership with respect to the acquisition and development of any other tract wherever located.

The October 6 withdrawal agreement included a merger clause.

On October 7, 1998, Edwards and Long Point Farms closed on the purchase of the Eddy Farm property. The owners of the Eddy Farm tract executed deeds to Long Point Farms prior to the October 6 withdrawal agreement being signed. Edwards had two lots in the Eddy Farm property "already under contract to sell" prior to withdrawing from the Partnership.

McDaniel brought this suit alleging Edwards misappropriated a partnership opportunity. He asserted Edwards fraudulently concealed the truth regarding the Eddy Farm property in order to have any provision related to it excluded from the withdrawal agreement. Finally, McDaniel maintained he relied on Edwards' misrepresentations in agreeing to remove the Eddy Farm property from the terms of the withdrawal agreement. After filing an answer and counterclaim, Edwards moved for summary judgment.

The trial court found the October 6, 1998 withdrawal agreement contained both a merger clause and a non-reliance clause. The judge concluded McDaniel contracted away the right to rely on the representation from Edwards regarding the status of the Eddy Farm property. The court ruled McDaniel did not have the right to rely on the representation. The court granted summary judgment to Edwards based on the merger clause in the October 6 withdrawal agreement.

## STANDARD OF REVIEW

When reviewing the grant of a summary judgment motion, the appellate court applies the same standard which governs the trial court under Rule 56(c), SCRCP: summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Fleming v. Rose*, 350 S.C. 488, 567 S.E.2d 857 (2002); *Baril v. Aiken Reg'l Med. Ctrs.*, 352 S.C. 271, 573 S.E.2d 830 (Ct.App.2002). Summary judgment is appropriate where the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Russell v. Wachovia Bank, N.A.,* Op. No. 25599, 353 S.C. 208, 217, 578 S.E.2d 329, 334 (2003); *Smith v. South Carolina Ins. Co.,* 350 S.C. 82, 564 S.E.2d 358 (Ct.App.2002).

In determining whether any triable issues of fact exist for summary judgment purposes, the evidence and all the inferences that can be reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *Cunningham v. Helping Hands, Inc.,* 352 S.C. 485, 575 S.E.2d 549 (2003); *Faile v. South Carolina Dep't of Juvenile Justice,* 350 S.C. 315, 566 S.E.2d 536 (2002); *McNair v. Rainsford,* 330 S.C. 332, 499 S.E.2d 488 (Ct.App.1998). If triable issues exist, those issues must go to the jury. *Young v. South Carolina Dep't of Corr.,* 333 S.C. 714, 511 S.E.2d 413 (Ct.App.1999).

Summary judgment is not appropriate where further inquiry into the facts of the case is desirable to clarify the application of the law. *Vermeer Carolina's, Inc. v. Wood/ Chuck Chipper Corp.,* 336 S.C. 53, 518 S.E.2d 301 (Ct.App. 1999). All ambiguities, conclusions, and inferences arising from the evidence must be construed most strongly against the moving party. *Bayle v. South Carolina Dep't of Transp.,* 344 S.C. 115, 542 S.E.2d 736 (Ct.App.2001); see also *Ferguson v. Charleston Lincoln Mercury, Inc.,* 349 S.C. 558, 563, 564 S.E.2d 94, 96 (2002) ("On appeal from an order granting summary judgment, the appellate court will review all ambiguities, conclusions, and inferences arising in and from the evidence in a light most favorable to the non-moving party below."). Even when there is no dispute as to evidentiary facts, but only as to the conclusions or inferences to be drawn from them, summary judgment should be denied. *Hall v. Fedor,* 349 S.C. 169, 561 S.E.2d 654 (Ct.App.2002). Moreover, summary judgment is a drastic remedy which should be cautiously invoked so no person will be improperly deprived of a trial of the disputed factual issues. *Lanham v. Blue Cross & Blue Shield,* 349 S.C. 356, 563 S.E.2d 331 (2002); *Trivelas v. South Carolina Dep't of Transp.,* 348 S.C. 125, 558 S.E.2d 271 (Ct.App.2001).

## *LAW/ANALYSIS*

McDaniel contends the trial court erred in finding the October 6, 1998 withdrawal agreement contained a non-reliance clause. He maintains the trial court erred in finding that, by signing the agreement with or without a non-reliance clause, he was not justified in relying upon the representations by Edwards regarding the loss of the Eddy Farm property.

### A. "Entire Agreement" Clause

The October 6 withdrawal agreement contained the following paragraph:

9. *Entire Agreement.* This Agreement contains the entire agreement and understanding by and between Edwards and the Partnership with respect to the subject matter hereof. All prior agreements and negotiations are merged herein, and if not set forth herein are duly waived. *Each party agrees that representations, promises, agreements or understandings, written or oral, not contained herein shall be of no force or effect.* No change or modification of this Agreement shall be valid or binding unless the same is in writing or signed by the party intended to be bound.... (Emphasis added.)

■ The trial court found the emphasized language above was a non-reliance clause. The court determined the clause was intended to waive the right of either party to complain regarding the representations of the other party which were not specifically set forth in the agreement. We disagree.

The trial court relied on *One–O–One Enters., Inc. v. Caruso,* 848 F.2d 1283 (D.C.Cir.1988), for the proposition that one may not reasonably rely on prior representations where the agreement " 'supersede[s] any and all previous understandings and agreements.' " *Id.* at 1286. The District of Columbia Circuit Court of Appeals stated that because 1) the provision in question was excluded in the final agreement and 2) the final agreement had a merger clause, the parties could not reasonably rely upon alleged promises, which were directly contradicted by the terms of the subsequent agreement. *Id.*

In *One–O–One,* the parties, in a preliminary agreement, included a provision "incorporating defendants' prior representations regarding their long-term commitment to the Rust-

ler business." *Id.* at 1284. In the final agreement, after vigorous negotiations regarding the provision and others, the parties agreed to exclude the provision. *Id.* In the instant case, however, the provision was not a negotiated position eliminated from the contract. Any reference to the Eddy Farm property was eliminated due to the representations by Edwards.

Additionally, the court in *One–O–One* did not hold the clause was a non-reliance clause, but that it was an integration or merger clause, which barred resort to prior agreements. In this case, the trial court found the clause to be a non-reliance clause. We hold the provision is not a non-reliance clause, but merely an extension of the merger clause.

In the cases cited by Edwards regarding non-reliance clauses, the language is much different from the clause in the instant case. The typical language of a non-reliance clause can be found in *Rissman v. Rissman,* 213 F.3d 381 (7th Cir.2000). The language used in that agreement stated: *"The parties further declare that they have not relied* upon any representation of any party hereby released ... or of their attorneys ..., agents, or other representatives concerning the nature or extent of their respective injuries or damages." *Id.* at 383 (emphasis added). In *Rissman,* the parties expressly agreed they did not rely. The contract provided:

> (a) no promise or inducement for this Agreement has been made to him except as set forth herein; (b) this Agreement is executed ... freely and voluntarily, and *without reliance upon any statement or representation* by Purchaser, the Company, any of the Affiliates or O.R. Rissman or any of their attorneys or agents except as set forth herein; (c) he has read and fully understands this Agreement and the meaning of its provisions; (d) he is legally competent to enter into this Agreement and to accept full responsibility therefor; and (e) he has been advised to consult with counsel before entering into this Agreement and has had the opportunity to do so.

*Id.* (emphasis added). The parties in *Rissman* wrote the above language into the contract to insure it was perspicuous to all involved that no representations were relied upon by either party.

The language used in the case *sub judice* neither includes the words "rely" or "reliance," nor does it set forth any statement that the parties did not, or could not, rely on the representations of the other party. The clause merely provides that the prior "representations, promises, agreements or understandings, written or oral, not contained herein shall be of no force or effect" within the contract, thereby accomplishing the same purpose as a merger clause. *See Black's Law Dictionary* 989 (6th ed.1990) (defining a merger clause as "[a] provision in a contract to the effect that the written terms may not be varied by prior or oral agreements because all such agreements have been merged into the written document."). We conclude the provision is not a non-reliance clause, but is merely a portion of the merger clause.

### B.  Parol Evidence Rule/Merger Clause

■  We now turn to South Carolina law to determine whether the parol evidence rule or the merger clause bars the admission of extrinsic evidence regarding fraud and negligent misrepresentation. We find extrinsic evidence is not barred by the parol evidence rule or the merger clause.

■  The parol evidence rule prevents the introduction of extrinsic evidence of agreements or understandings contemporaneous with or prior to execution of a written instrument when the extrinsic evidence is to be used to contradict, vary, or explain the written instrument. *See Estate of Holden v. Holden*, 343 S.C. 267, 539 S.E.2d 703 (2000); *Crafton v. Brown*, 346 S.C. 347, 550 S.E.2d 904 (Ct.App.2001).

■  It is axiomatic that there exists a well established exception to the parol evidence rule which allows extrinsic evidence by the party attacking an instrument on the ground of fraud. *Bradley v. Hullander*, 272 S.C. 6, 249 S.E.2d 486 (1978); *Allen–Parker Co. v. Lollis*, 257 S.C. 266, 185 S.E.2d 739 (1971); *see also* Restatement (Second) of Agency § 257 cmt. c (1958) ("Although parol evidence cannot be introduced to vary or contradict the terms of a written contract, it can be introduced for the purpose of proving that the contract was obtained by means of untrue statements."); *Pinken v. Frank*, 704 F.2d 1019, 1023 (8th Cir.1983) (finding "the fraudulent inducement exception to the parol evidence rule is not ren-

dered inapplicable by a contract merger provision that all agreements between the parties are contained therein or a provision that no verbal agreement affecting the validity of the written contract will be recognized.").

The South Carolina Supreme Court examined whether the parol evidence rule is applicable to a cause of action for negligent misrepresentation in *Gilliland v. Elmwood Properties,* 301 S.C. 295, 391 S.E.2d 577 (1990):

> Gilliland argues that either the parol evidence rule or the merger clause in the parties' contract precludes Elmwood's negligent misrepresentation claim. We do not agree. We have previously held that parol evidence is generally admissible to show fraud in the inducement of a writing. *See Bradley v. Hullander,* 272 S.C. 6, 249 S.E.2d 486 (1978), *appeal after remand,* 277 S.C. 327, 287 S.E.2d 140 (1982). In *Bradley* we did not decide whether this is true for negligent misrepresentation as such was not alleged or proved in that case. The applicability of the parol evidence rule to a cause of action for negligent misrepresentation is apparently a novel issue in this state.
>
> "In a majority of jurisdictions the parol evidence rule bars oral testimony in certain contract cases, but is not applicable in misrepresentation cases." *Rempel v. Nationwide Life Ins. Co.,* 471 Pa. 404, 370 A.2d 366, 370 (1977). The parol evidence rule has been held inapplicable to tort causes of action (including negligent misrepresentation) since the rule is one of substantive contract law. *Formento v. Encanto Business Park,* 154 Ariz. 495, 744 P.2d 22 (App.1987). Furthermore, it has been held that "a seller should not be allowed to hide behind an integration clause to avoid the consequences of a misrepresentation, whether fraudulent or negligent." *Id.,* 744 P.2d at 26. We follow the reasoning of the *Formento* court and hold that neither the parol evidence rule nor the merger or integration clause in the parties' contract prevents Elmwood from proceeding on its negligent misrepresentation theory.

*Id.* at 301–02, 391 S.E.2d at 580–81; *see also Koontz v. Thomas,* 333 S.C. 702, 511 S.E.2d 407 (Ct.App.1999) (noting that in South Carolina, as in the majority of jurisdictions, parol evidence rule bars oral testimony in certain contract cases; however Supreme Court has held parol evidence rule is

not applicable in cases involving tort of negligent misrepresentation).

■ We find Edwards should not be allowed to hide behind the merger clause in the withdrawal agreement. "[T]he parol evidence rule was designed to prevent frauds, not to promote frauds by immunizing a party from claims arising out of his fraudulent misrepresentations." *Pinken*, 704 F.2d at 1023. Accepting as true the facts as presented by McDaniel, Edwards knew he was misrepresenting the status of the Eddy Farm property. He had already submitted an agreement to purchase the property and was able to close on the property on October 7, one day after signing the October 6 withdrawal agreement. We find the trial court erred in ruling the merger clause barred the admission of parol evidence regarding the causes of action for fraud and negligent misrepresentation.

## C. Reliance as Question of Fact

■ McDaniel's claims are based on fraud and negligent misrepresentation. The elements of an action for fraud based on a representation include: (1) a representation; (2) falsity; (3) its materiality; (4) knowledge of the falsity or a reckless disregard of its truth or falsity; (5) intent that the representation be acted upon; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance upon the truth; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximate injury. *First State Sav. & Loan v. Phelps*, 299 S.C. 441, 385 S.E.2d 821 (1989); *Moorhead v. First Piedmont Bank & Trust Co.*, 273 S.C. 356, 256 S.E.2d 414 (1979).

■ In a claim for the tort of negligent misrepresentation where the damage alleged is a pecuniary loss, the essential elements include: (1) the defendant made a false representation to the plaintiff; (2) the defendant had a pecuniary interest in making the statement; (3) the defendant owed a duty of care to see that he communicated truthful information to the plaintiff; (4) the defendant breached that duty by failing to exercise due care; (5) the plaintiff justifiably relied on the representation; and (6) the plaintiff suffered a pecuniary loss as the proximate result of his reliance upon the representation. *Rickborn v. Liberty Life Ins. Co.*, 321 S.C. 291, 468

S.E.2d 292 (1996); *Koontz v. Thomas,* 333 S.C. 702, 511 S.E.2d 407 (Ct.App.1999).

The Supreme Court, in *Gilliland v. Elmwood Props.,* 301 S.C. 295, 391 S.E.2d 577 (1990), discussed the tort of negligent misrepresentation:

> In South Carolina, one may bring an action sounding in tort for negligent misrepresentation. "A duty to exercise reasonable care in giving information exists when the defendant has a pecuniary interest in the transaction." *Winburn v. Insurance Co.,* 287 S.C. 435, 441, 339 S.E.2d 142, 146 (Ct.App.1985). "The recovery of damages may be predicated upon a negligently made false statement where a party suffers either injury or loss as a consequence of relying upon the misrepresentation." *Id.* These general rules have been applied, in every case this Court has located, to support the recognition of a negligent misrepresentation claim where the misrepresented fact(s) induced the plaintiff to enter a contract or business transaction. *See, e.g., Winburn, supra* (recognizing that under appropriate facts, negligent representations inducing the signing of an endorsement could be actionable); *Pittman v. Galloway,* 281 S.C. 70, 313 S.E.2d 632 (Ct.App.1984) (negligent representation inducing the plaintiff's purchase of land is actionable); and *First Federal Sav. Bank v. Knauss,* 296 S.C. 136, 370 S.E.2d 906 (Ct.App.1988) (recognizing that under appropriate facts, negligent representations inducing property purchase could be actionable).

*Id.* at 301, 391 S.E.2d at 580.

Edwards contends McDaniel had no right to rely, nor could he have justifiably relied, on the representation regarding the Eddy Farm tract because McDaniel agreed in the withdrawal agreement not to rely. Even if the clause in the withdrawal agreement is considered a non-reliance clause, then the precedent in South Carolina is to look to the totality of circumstances to determine whether reliance was justified. *See West v. Gladney,* 341 S.C. 127, 533 S.E.2d 334 (Ct.App. 2000). "Whether reliance is justified in a given situation requires an evaluation of the circumstances involved, including the positions and relations of the parties." *Elders v. Parker,* 286 S.C. 228, 233, 332 S.E.2d 563, 567 (Ct.App.1985); *see also*

*Parks v. Morris Homes Corp.*, 245 S.C. 461, 467, 141 S.E.2d 129, 132 (1965) ("What constitutes reasonable prudence and diligence with respect to reliance upon a representation in a particular case and the degree of fault attributable to such reliance will depend upon the various circumstances involved, such as the form and materiality of the representation, the respective intelligence, experience, age, and mental and physical condition of the parties, the relation and respective knowledge and means of knowledge of the parties, etc."). "The general rule is that questions concerning reliance and its reasonableness are factual questions for the jury." *Unlimited Servs., Inc. v. Macklen Enters., Inc.*, 303 S.C. 384, 387, 401 S.E.2d 153, 155 (1991); *see also Starkey v. Bell*, 281 S.C. 308, 313, 315 S.E.2d 153, 156 (Ct.App.1984) ("Issues of reliance and its reasonableness, going as they do to subjective states of mind and applications of objective standards of reasonableness, are preeminently factual issues for the triers of the facts.").

■ Here, the circumstances involved a person who had a fiduciary duty to disclose all relevant facts and refrain from taking advantage of the other partners by the slightest misrepresentation or concealment. *See Lawson v. Rogers*, 312 S.C. 492, 435 S.E.2d 853 (1993); *Few v. Few*, 239 S.C. 321, 122 S.E.2d 829 (1961).

McDaniel claims Edwards violated his duties as a partner. McDaniel argues that, as a partner, Edwards owed McDaniel the highest degree of good faith in his dealings with reference to any matter concerning the business.

■ Partners are fiduciaries each to the other and their relationship is one of mutual trust and confidence, imposing upon them requirements of loyalty, good faith and fair dealing. *Few*, 239 S.C. at 336, 122 S.E.2d at 836; *see also Kuznik v. Bees Ferry Assocs.*, 342 S.C. 579, 538 S.E.2d 15 (Ct.App.2000) (noting that one of the paramount duties of partners among themselves, if not the primary duty, is their fiduciary duty, universally recognized as including a duty to exercise good faith and maintain the highest integrity in dealing with other partners).

The duty owed by partners to each other is further detailed in S.C.Code Ann. § 33–41–540(1) (1990):

Every partner must account to the partnership for any benefit and hold as trustee for it any profits derived by him without the consent of the other partners from any transaction connected with the formation, conduct, or liquidation of the partnership or from any use by him of its property.

"A 'fiduciary relationship' is founded on trust and confidence reposed by one person in the integrity and fidelity of another." *Steele v. Victory Sav. Bank,* 295 S.C. 290, 293, 368 S.E.2d 91, 93 (Ct.App.1988). It exists when one imposes a special confidence in another, so that the latter, in equity and good conscience, is bound to act in good faith and with due regard to the interests of the one imposing the confidence. *Id.; see also Landvest Assocs. v. Owens,* 276 S.C. 22, 274 S.E.2d 433 (1981) (observing that partners were fiduciaries to each other). The fiduciary relationship of partners is discussed in 59A Am.Jur.2d *Partnership* § 420 (1987):

The courts universally recognize the fiduciary relationship of partners and impose on them obligations of the utmost good faith and integrity in their dealings with one another in partnership affairs. It is a fundamental characteristic of partnership that the partners' relationship is one of trust and confidence when dealing with each other in partnership matters.

Partners are held to a standard stricter than the morals of the marketplace, and their fiduciary duties should be broadly construed, connoting not mere honesty but the punctilio of honor most sensitive. In all matters connected with the partnership every partner is bound to act in a manner not to obtain any advantage over his copartner in the partnership affairs by the slightest misrepresentation, concealment, threat, or adverse pressure of any kind. A partner cannot act too quickly to protect his own financial position at the expense of his partners, even in the absence of malice.

59A Am.Jur.2d *Partnership* § 420 (1987) (footnotes omitted).

South Carolina case law recognizes the fiduciary duty owed between partners:

The law holds each member of a partnership to the *highest degree of good faith* in his dealings with reference to any matter which concerns the business of the common

engagement, and each partner, being the agent of the firm, must be held to the same accountability as other trustees, in all matters which affect the common interest. The relationship of a partnership is fiduciary in character and imposes on the members the obligation of *refraining from taking any advantage of one another by the slightest misrepresentation or concealment.*

*Lawson,* 312 S.C. at 498–99, 435 S.E.2d at 857 (emphasis added) (citations omitted); *see also Edwards v. Johnson,* 90 S.C. 90, 72 S.E. 638 (1911) (stating that each member of a partnership is held to the highest degree of good faith in his dealings with reference to any matter concerning the business of the common engagement, and each partner, being an agent of the firm, must be held, during the existence of the relation, to the same accountability as other trustees in all matters affecting the common interest).

Apodictically, Edwards was in a fiduciary relationship with McDaniel and owed McDaniel the highest loyalty. The nature of the partnership relationship imposed a fiduciary duty upon Edwards to refrain from taking any advantage of McDaniel by even the slightest misrepresentation or concealment. Such a relationship imposes "the duty of the finest loyalty[,] . . . [n]ot honesty alone, but the punctilio of an honor the most sensitive." *Kuznik,* 342 S.C. at 597, 538 S.E.2d at 24 (quoting *Meinhard v. Salmon,* 249 N.Y. 458, 164 N.E. 545 (1928)). Edwards cannot act to protect his own financial interests at the expense of the interests of the other partners and the Partnership. *See* 59A Am.Jur.2d *Partnership* § 420.

When asked why the provision was struck through, McDaniel responded:

Because when I brought this up, Mr. Edwards told me that we had lost the Eddy tract, the lawyers from the estate got it and we could no longer get it. I go, shoot, if it's gone, it's gone. I thought that's the way we were doing it. And I scratched through it.

McDaniel was then asked: "Why not put it in there just in case that particular deal that you claim Mr. Edwards told you about fell through?" He answered: "Hindsight is 40/40. *I had no reason to doubt my partner.* He told me. I did it.

And that's the way it is. I have no reasons to—any other motive." (emphasis added).

In the instant case, the misrepresentation was allegedly made for the distinct purpose of taking a partnership opportunity for Edwards' own financial benefit. The representation was made in response to the inclusion of the Eddy Farm tract in the August 5 handwritten withdrawal agreement as a property on which Edwards could not compete with the Partnership. McDaniel averred that if Edwards had not represented that the Eddy Farm was "lost," the property would have remained in the agreement as a Partnership opportunity. It was a question for the jury to determine whether McDaniel had the right to rely on Edwards' representation after considering the relationship of the parties, the nature and materiality of the representation, and the clause in the contract. *See Epstein v. Howell,* 308 S.C. 528, 419 S.E.2d 379 (Ct.App.1992).

## CONCLUSION

The trial court erred in concluding the October 6, 1998 withdrawal agreement contained a non-reliance clause. We rule the October 6 agreement is subject to parol evidence on the issues of fraud and negligent misrepresentation. South Carolina precedent allows parol evidence to show fraud. The parol evidence rule is not applicable to a cause of action for negligent misrepresentation. Additionally, the court erred in finding the merger clause barred the admission of parol evidence to show the agreement was entered into only after Edwards' allegedly fraudulent representations and/or negligent misrepresentation. Finally, we conclude that because the clause is **not** a non-reliance clause, the question of whether McDaniel's reliance was reasonable was a question of fact for the jury after consideration of the totality of the circumstances. The trial court erred in granting summary judgment, as there were genuine issues of material fact remaining. Accordingly, the decision of the trial court is

**REVERSED AND REMANDED.**

HUFF, J., and MOREHEAD, Acting Judge, concur.